No. 24-10029

# United States Court of Appeals
### *for the*
# Eleventh Circuit

---

RICARDO DEVENGOECHEA,

*Plaintiff-Appellee,*

— v. —

BOLIVARIAN REPUBLIC OF VENEZUELA, a foreign state,

*Defendant-Appellant.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA IN CASE NO. 1:12-CV-23743-PCH
(PAUL C. HUCK, SENIOR U.S. DISTRICT COURT JUDGE)

## OPENING BRIEF OF DEFENDANT-APPELLANT THE BOLIVARIAN REPUBLIC OF VENEZUELA

CLAIRE A. DELELLE
BLAIR E. TRAHAN
WHITE & CASE, LLP
701 Thirteenth Street NW
Washington, DC 20005
(202) 626-3600

JAIME BIANCHI
DYLAN FAY
WHITE & CASE, LLP
200 South Biscayne Boulevard,
    Suite 4900
Miami, Florida 33131
(305) 371-2700

*Counsel for the Bolivarian Republic of
Venezuela*

*Devengoechea v. Bolivarian Republic of Venezuela*        Case No. 24-10029-J

## AMENDED CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1, Appellant Bolivarian Republic of Venezuela (the "Republic" or "Defendant") certifies the following individuals and parties may have an interest in the outcome of this appeal.

1. Bank of America N.A. (Garnishee)

2. Becerra, the Honorable Jacqueline (United States Magistrate Judge)

3. Bianchi, Jaime (Counsel for Appellant)

4. Bilzin Sumberg Baena Price & Axelrod (Former Counsel for Appellant)

5. Blasi, Fernando (Member of CAPA)

6. Cordano, Miguel (Counsel for Garnishee)

7. Council for the Administration and Protection of Assets of the Republic of Venezuela (Consejo de Administración y Protección de Activos de la República de Venezuela) ("CAPA")

8. Curtis Mallet-Prevost Colt & Mose, LLP (Former Counsel for Appellant)

9. DeLelle, Claire (Counsel for Appellant)

10. Devengoechea, Ricardo (Appellee)

11. Fay, Dylan (Counsel for Appellant)

12. Garcia, Robert (Former Counsel for Appellant)

*Devengoechea v. Bolivarian Republic of Venezuela*   Case No. 24-10029-J

13. Goicoechea, Yon (Member of CAPA)

14. Huck, the Honorable Paul C. (United States District Court Judge)

15. Lustrin, Lori (Former Counsel for Appellant)

16. Marcano, Gustavo (Coordinator of CAPA)

17. Meehan, Kevin (Former Counsel for Appellant)

18. Millan, Carlos (Member of CAPA)

19. Mora, Martha Rose (Former Counsel for Appellee)

20. Pizzurro, Joseph (Former Counsel for Appellant)

21. Price, Max (Counsel for Appellee)

22. Trahan, Blair (Counsel for Appellant)

23. Uzcategui, Rene (Member of CAPA)

24. White & Case LLP (Counsel for Appellant)

25. Widom, Mitchell (Former Counsel for Appellant)

Appellant the Bolivarian Republic of Venezuela submits that it is a foreign state, and thus is not a subsidiary or affiliate of a publicly-held corporation. No publicly traded company has a financial interest in the outcome of this case or appeal.

/s/ *Claire A. DeLelle*
Claire A. DeLelle

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Pursuant to Federal Rule of Appellate Procedure 31(a)(2) and Eleventh Circuit Rule 28-1(c), Defendant respectfully submits that oral argument will aid the Court's consideration of this appeal.

This appeal presents important questions about the proper application of the immunity provisions of the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1602–11, as applied to a foreign sovereign. This appeal further implicates the appropriate law for assessing damages against a foreign sovereign under 28 U.S.C. § 1606 and U.S. Supreme Court precedent.

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

AMENDED CERTIFICATE OF INTERESTED PERSONS  AND
CORPORATE DISCLOSURE STATEMENT ......................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ...............................................i

TABLE OF CITATIONS ......................................................................................iv

INTRODUCTION ................................................................................................1

STATEMENT OF JURISDICTION.......................................................................4

STATEMENT OF THE ISSUES.............................................................................4

STATEMENT OF THE CASE.................................................................................4

      A.    The Evolution of Plaintiff's Allegations ...............................4

      B.    The Republic's Motion to Dismiss and Interlocutory Appeal ........... 12

      C.    The Republic's Summary Judgment Motion .................................... 13

      D.    Venezuela's Political Crisis ............................................................. 13

      E.    Plaintiff's Motion to Stay................................................................. 16

      F.    Withdrawal of Counsel for the Republic .......................................... 18

      G.    Denial of Summary Judgment and Trial ........................................... 18

STANDARD OF REVIEW ...................................................................................25

SUMMARY OF THE ARGUMENT ....................................................................26

ARGUMENT ........................................................................................................28

I.    The District Court Lacked Subject-Matter Jurisdiction Under the FSIA to
Enter Judgment Against the Republic ..........................................................28

A.    Plaintiff failed to prove this action is "based upon" a commercial act of the Republic..............................................................................32

B.    Plaintiff failed to prove that the first clause of the commercial activity exception applied...................................................38

C.    Plaintiff failed to prove that the second clause of the commercial activity exception applied...................................................42

D.    Plaintiff failed to prove that the third clause of the commercial activity exception applied...................................................43

III.    The District Court Lacked Personal Jurisdiction Over the Republic ............49

IV.    The District Court Erred in Assessing Plaintiff's Damages...........................49

CONCLUSION .......................................................................................................54

CERTIFICATE OF COMPLIANCE.......................................................................56

CERTIFICATE OF SERVICE ...............................................................................57

## <u>TABLE OF CITATIONS</u>

<u>Page(s)</u>

### CASES

*Acree v. Republic of Iraq*,
    370 F.3d 41 (D.C. Cir. 2004)...................................................................51

*Aquamar S.A. v. Del Monte Fresh Produce N.A.*,
    179 F.3d 1279 (11th Cir. 1999) ...........................................................33

*Araya-Solorzano v. Gov't of Republic of Nicaragua*,
    562 F. App'x 901 (11th Cir. 2014) ................................................44, 49

*Argentine Republic v. Amerada Hess Shipping Corp.*,
    488 U.S. 428 (1989)................................................................................28

*Arleth v. Freeport-McMoran Oil & Gas Co.*,
    2 F.3d 630 (5th Cir. 1993) ....................................................................53

*Arriaga v. Fla. Pac. Farms, L.L.C.*,
    305 F.3d 1228 (11th Cir. 2002) ...........................................................34

*\*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*,
    581 U.S. 170 (2017)..................................................................26, 29, 36

*Broidy Cap. Mgmt. LLC v. Benomar*,
    944 F.3d 436 (2d Cir. 2019) .................................................................29

*Calzadilla v. Banco Latino Internacional*,
    413 F.3d 1285 (11th Cir. 2005) ...........................................................25

*\*Cassirer v. Thyssen-Bornemisza Collection Found.*,
    596 U.S. 107 (2022)........................................................................36, 53

*Commercial Bank of Kuwait v. Rafidain Bank*,
    15 F.3d 238 (2d Cir. 1994) ...................................................................31

*\*Compania Interamericana Exp.-Imp., S.A. v. Compania Dominicana de Aviacion*,
    88 F.3d 948 (11th Cir. 1996) ...............................................................31

iv

*Cycles, Ltd. v. W.J. Digby, Inc.*,
 889 F.2d 612 (5th Cir. 1989) ...............................................................47

*DaimlerChrysler Corp. v. Cuno*,
 547 U.S. 332 (2006)...............................................................................29

*Devengoechea v. Bolivarian Republic of Venezuela*,
 889 F.3d 1213 (11th Cir. 2018) .......................................... 29, 32, 33, 35, 39, 44

*Fioretti v. Mass. Gen. Life Ins. Co.*,
 53 F.3d 1228 (11th Cir. 1995) ..............................................................36

*Fireman's Fund Ins. Co. v. Panalpina, Inc.*,
 153 F. Supp. 2d 1339 (S.D. Fla. 2001) ..................................................37

*GDG Acquisitions LLC v. Gov't of Belize*,
 849 F.3d 1299 (11th Cir. 2017) ............................................................33

*General Electric Capital Corp. v. Grossman*,
 991 F.2d 1376 (8th Cir. 1993) ..............................................................41

*Gerding v. Republic of France*,
 943 F.2d 521 (4th Cir. 1991) ................................................................41

*Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n*,
 117 F.3d 1328 (11th Cir. 1997) ......................................................26, 49

*Hanson v. Waller*,
 888 F.2d 806 (11th Cir. 1989) ........................................................53, 54

*Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela*,
 784 F.3d 804 (D.C. Cir. 2015)......................................................44, 48, 49

*Howard v. Hyundai Motor Manufacturing Alabama*,
 754 F. App'x 798 (11th Cir. 2018) ........................................................38

*In re Citation Corp.*,
 349 B.R. 290 (Bankr. N.D. Ala. 2006) ..................................................37

*In re Garner*,
 56 F.3d 677 (5th Cir. 1995) ..................................................................31

*In re Janmar, Inc.*,
    4 B.R. 4 (Bankr. N.D. Ga. 1979) .........................................................................47

*\*Jam v. International Finance Corp.*,
    3 F.4th 405 (D.C. Cir. 2021)....................................................................39, 40

*James A. Knowles, Inc. v. Imperial Lumber Co.*,
    238 So.2d 487 (Fla. Dist. Ct. App. 1970) ...........................................................49

*Kensington International, Ltd. v. Itoua*,
    505 F.3d 147 (2d Cir. 2007) .................................................................................42

*\*Kim v. Democratic People's Republic of Korea*,
    774 F.3d 1044 (D.C. Cir. 2014)....................................................................31, 35

*Mar. Int'l Nominees Establishment v. Republic of Guinea*,
    693 F.2d 1094 (D.C. Cir. 1982) ...........................................................................41

*MMA Consultants 1, Inc. v. Republic of Peru*,
    719 F. App'x 47 (2d Cir. 2017) ...........................................................................39

*Moore v. United States*,
    598 F.2d 439 (5th Cir. 1979) ........................................................................53, 54

*\*OBB Personenverkehr AG v. Sachs*,
    577 U.S. 27 (2015)....................................................................................8, 23, 35

*Odhiambo v. Republic of Kenya*,
    764 F.3d 31 (D.C. Cir. 2014).............................................................41, 43, 44

*Oldfield v. Pueblo de Bahia Lora, S.A.*,
    558 F.3d 1210 (11th Cir. 2009) ...........................................................................50

*Owens v. Republic of Sudan*,
    864 F.3d 751 (D.C. Cir. 2017)....................................................................50, 51

*Packsys, S.A. de C.V. v. Exportadora de Sal, S.A. de C.V.*,
    899 F.3d 1081 (9th Cir. 2018) .............................................................................39

*Practical Concepts, Inc. v. Republic of Bolivia*,
    811 F.2d 1543 (D.C. Cir. 1987).........................................................................50

*Reed v. Islamic Republic of Iran*,
    845 F. Supp. 2d 204 (D.D.C. 2012) ....................................................31

*Regions Bank v. Kearney*,
    597 F. App'x 1012 (11th Cir. 2014) ...........................................26, 50

*\*Republic of Sudan v. Harrison*,
    139 S. Ct. 1048 (2019) .......................................................................50

*Rhuma v. Libya*,
    2022 WL 686432 (E.D. Cal. Mar. 8, 2022) .......................................30

*Rodriguez v. Riddell Sports, Inc.*,
    242 F.3d 567 (5th Cir. 2001) .............................................................54

*Rosner v. United States*,
    231 F. Supp. 2d 1202 (S.D. Fla. 2002) ........................................37, 38

*Rowland v. California Men's Colony*,
    506 U.S. 194 (1993) ...........................................................................30

*S & Davis International v. Republic of Yemen*,
    218 F.3d 1292 (11th Cir. 2000) .........................................................50

*Samco Glob. Arms, Inc. v. Arita*,
    395 F.3d 1212 (11th Cir. 2005) ..............................................44, 47, 49

*\*Saudi Arabia v. Nelson*,
    507 U.S. 349 (1993) .................................................................29, 36, 42

*Schoeps v. Freistaat Bayern*,
    611 F. App'x 32 (2d Cir. 2015) .....................................................41, 42

*Soudavar v. Islamic Republic of Iran*,
    186 F.3d 671 (5th Cir. 1999) .............................................................41

*Taylor Group v. Industrial Distributors International Co.*,
    859 F. App'x 439 (11th Cir. 2021) .....................................................34

*Terenkian v. Republic of Iraq*,
    694 F.3d 1122 (9th Cir. 2012) ...........................................................41

*Thyssen Steel Co. v. M/V Kavo Yerakas*,
50 F.3d 1349 (5th Cir. 1995) ...............................................................37

*Treasure Coast Tractor Service, Inc. v. JAC General Construction, Inc.*,
8 So.3d 461 (Fla. Dist. Ct. App. 2009) ...............................................49

*Tufts v. Hay*,
977 F.3d 1204 (11th Cir. 2020) ..........................................................25

*Voest-Alpine Trading USA Corp. v. Bank of China*,
142 F.3d 887 (5th Cir. 1998) ..............................................................42

*Zedan v. Kingdom of Saudi Arabia*,
849 F.2d 1511 (D.C. Cir. 1988) ..........................................................40

## STATUTES AND RULES

28 U.S.C. § 1603 ..................................................................................40

28 U.S.C. § 1604 ..................................................................................28

28 U.S.C. § 1605 ....................................................................................4

28 U.S.C § 1606 .......................................................................28, 52, 53

28 U.S.C. § 1607 ..................................................................................29

28 U.S.C. § 1608 ......................................... 26, 30, 31, 33, 35, 38, 49

Fed. R. Evid. 614 .................................................................................54

## OTHER AUTHORITIES

8A Am. Jur. 2d Bailments § 1 (West 2024)..........................................37

## **INTRODUCTION**

This appeal arises from a final judgment entered against the Bolivarian Republic of Venezuela, a foreign state entitled to presumptive immunity and the procedural protections of the Foreign Sovereign Immunities Act ("FSIA"), following a 90-minute, one-sided "trial" at which the Republic was unrepresented. The District Court erroneously went forward without any representative of the Republic, which it characterized as proceeding pro se, despite black-letter law that a sovereign entity cannot participate in litigation without counsel. This hasty process stands in stark contrast to the slow crawl of this litigation over the preceding decade, caused by Plaintiff's multiple amended complaints and delay in prosecuting his case.

The allegations in this case are nearly as convoluted as its procedural history. In short, Plaintiff — who has never had to stand by his allegations under the glare of cross-examination — contends that in 2007, he attempted to sell a collection of material with supposed historically significant connections to General Simón Bolívar, the liberator and namesake of the Bolivarian Republic of Venezuela. Plaintiff initially discussed this collection with several individuals in Florida whom he has since claimed were Venezuelan government officials. Plaintiff then flew with the collection to Venezuela to have it authenticated and shopped around through his cousin, a historian who later agreed to act as Plaintiff's agent in Venezuela. After a month in Venezuela, unable to make the sale, Plaintiff left the collection in

1

Venezuela for further authentication, purportedly pursuant to a bailment agreement he made with the Republic. The Republic did not buy the collection. Instead, the collection returned to Plaintiff's cousin in Venezuela where it remained while Plaintiff declined to collect it.

Rather than simply getting on a plane to recover the allegedly significant, though un-inventoried and unauthenticated, collection, Plaintiff has spent the last 12 years seeking recovery from the Republic through this litigation. The Republic appeared through prior counsel instructed by the now-derecognized regime of Nicolás Maduro, asserted its foreign sovereign immunity, and defended against Plaintiff's claims on the merits, including by filing a motion for summary judgment in late 2018. That motion remained pending for nearly three years when Plaintiff obtained a stay to inexplicably seek a license from the Office of Foreign Assets Control ("OFAC") authorizing him to enforce the settlement agreement he purported to have concluded with the Republic that, by its plain terms, expired before U.S. sanctions even implicated the agreement.

The Republic's summary judgment motion and the stay coincided with the onset of Venezuela's political crisis, which erupted in 2018 when the Maduro regime usurped the Venezuelan presidency following fraudulent elections. In October 2022, with summary judgment still pending and the action stayed, the Republic's prior counsel properly moved to withdraw because the United States no longer recognized

their principal.  The District Court granted that withdrawal the following year, reopened the case, denied summary judgment, and set the case for trial.  At that point, the Republic was unrepresented and, under two centuries of law, was no longer appearing in the action.  But rather than proceed by default as is required in a defendant's absence, pursuant to the procedural and substantive protections of Rule 55 of the Federal Rules of Civil Procedure and § 1608(e) of the FSIA, Plaintiff treated the Republic as if it were "appearing" pro se.

That erroneous procedure led to an erroneous outcome.  The District Court failed to hold Plaintiff to his burden under the FSIA, including under § 1608(e), of proving an exception to the Republic's foreign sovereign immunity by compelling, admissible evidence.  Plaintiff cannot carry his burden and his judgment is thus void for lack of subject-matter and personal jurisdiction.  And because the insufficient evidence Plaintiff adduced in support of his final judgment was functionally the same as the evidence he relied on in opposing summary judgment, the District Court necessarily erred in denying that motion also.  Finally, even had Plaintiff shown jurisdiction under the FSIA, the District Court abused its discretion in assessing Plaintiff's damages.  For these reasons, this Court should vacate the District Court's void final judgment, reverse the prior orders leading to the final judgment, and remand this case with instructions for the District Court to dismiss this case with prejudice for lack of jurisdiction under the FSIA.

## STATEMENT OF JURISDICTION

This Court has jurisdiction to review the District Court's final judgment and all related orders under 28 U.S.C. § 1291.  This appeal was timely filed on January 3, 2024, where the judgment against Defendant was entered on December 4, 2023. D.E. 293, 295, 307.

The District Court purported to exercise subject-matter jurisdiction over this action under 28 U.S.C. § 1330 and § 1605(a), D.E. 293 at 8–11, which exercise of jurisdiction the Republic disputes.

## STATEMENT OF THE ISSUES

1.     Whether the District Court erred in concluding it had subject-matter and personal jurisdiction over the Republic under the FSIA, 28 U.S.C. §§ 1330, 1602–11.

2.     Whether the District Court abused its discretion in awarding Plaintiff's damages against the Republic.

## STATEMENT OF THE CASE

**A.    The Evolution of Plaintiff's Allegations**

**1.    Plaintiff's Original Complaint**

Plaintiff filed his Original Complaint on October 15, 2012, asserting takings claims and invoking the FSIA's expropriation exception, 28 U.S.C. § 1605(a)(3). D.E. 1.  Plaintiff, a Florida resident, claimed he owned a collection of historical documents and artifacts pertaining to General Simón Bolívar (the "Collection").

D.E. 1 at 3. The Original Complaint alleged unidentified Venezuelan officials contacted Plaintiff in October 2007 about the Collection and traveled to Florida. *Id.* at 4. These purported officials, including Delcy Rodriguez, escorted Plaintiff and the Collection to Venezuela, where Plaintiff participated in a month-long investigation regarding the Collection's authenticity. *Id.* On November 6, 2007, Plaintiff left the Collection in Venezuela pursuant to a purported "understanding" reached with the Republic in Venezuela, that the Collection would be returned to him after the investigation or upon his request. *Id.* at 5. The Original Complaint did not disclose whether this "understanding" specified where or by when the Collection was to be returned.

### 2. Plaintiff's Affidavit

A year after Plaintiff filed his Original Complaint, the District Court ordered Plaintiff to advise whether he intended to prosecute his case. D.E. 8. Without any proof of having served the Republic pursuant to the FSIA, Plaintiff filed a premature motion for default judgment. *See* D.E. 10, 13. The District Court ordered Plaintiff to demonstrate he had satisfied the FSIA's service requirements. D.E. 13. Following Plaintiff's supplemental submission, the District Court set trial to determine the amount of Plaintiff's damages. D.E. 15. Plaintiff filed a purported expert damages report that included an affidavit ("Affidavit") in which Plaintiff recounted a new version of his story. *See* D.E. 21, 21-3.

Contrary to Plaintiff's allegation in the Original Complaint that "Venezuelan government officials contacted [him]," Plaintiff averred that his "emails to several universities and experts including [his] distant cousin, Jorge Mier Hoffman, a recognized Bolivar historian" sparked the events leading to the Collection's journey to Venezuela. *Compare* D.E. 1 at 4, *with* D.E. 21-3 at 2. Mier responded that "he was associated with a Venezuelan museum" and would travel to Florida with a group of Venezuelans to examine the Collection. D.E. 21-3. And, on October 16, 2007, Plaintiff purportedly met with "[Mier], Delcy Rodriguez (Venezuela's Vice President's sister), Juan (Assistant to VP's Sister), Alberto Arvelo (Documentary Producer), Ananda Arvelo (Producer's Wife), and [Mier]'s wife (name unknown)," at a Hilton hotel in Orlando. *Id.* Plaintiff claimed these individuals invited him to travel to Venezuela with the Collection for further examination. *Id.* In contrast to the Original Complaint, the Affidavit omits any allegation that any of these individuals were Venezuelan "officials." *Compare* D.E. 1 at 4, *with* D.E. 21-3.

The Affidavit states that, upon arrival in Venezuela, Plaintiff, Mier, Arvelo, "Nelly Quintero, a spiritual advisor (a white witch)," and "Jorge Chasin, a university professor," conducted an "examination" of the Collection in Plaintiff's hotel room. D.E. 21-3 at 3. The Affidavit states Plaintiff first encountered "Venezuelan government officials" when he brought the Collection to the home of Venezuela's former president, Hugo Chávez, where unidentified "high ranking Venezuelan

government officials . . . requested that [Plaintiff] entrust [the C]ollection to them"
for further examination. *Id.*

Following an April 18, 2014 bench trial on damages, the District Court entered
a default judgment against the Republic on April 24, 2014, for over $6 million in
damages.   D.E. 24, 26, 27.   The District Court did not address the FSIA's
requirements for default, 28 U.S.C. § 1608(e), apparently misapprehending that
Article 15 of the Convention on the Service Abroad of Judicial and Extrajudicial
Documents in Civil or Commercial Matters ("Hague Convention") controlled. *See*
D.E. 26, 27; Hague Convention, art. 15, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No.
6638 (default provision for non-sovereign).

Without complying with applicable FSIA procedures, 28 U.S.C. § 1610(c),
Plaintiff sought a writ of garnishment to execute upon the judgment. *See* D.E. 30.
Shortly thereafter, former counsel for the Republic appeared and successfully moved
to dissolve the writ.  D.E. 52 at 1–10; D.E. 69 at 2.  The District Court vacated the
default judgment.  D.E. 99, 101.

### 3.    Plaintiff's First Amended Complaint

On June 22, 2015, the Republic moved to dismiss the Original Complaint for
lack of subject-matter and personal jurisdiction under the FSIA.  D.E. 102 at 6–13.
Without requesting leave, Plaintiff responded by filing his First Amended Complaint

("FAC"), which offered yet another version of events and a new theory of jurisdiction.  D.E. 106.

While the Original Complaint alleged expropriation, the FAC invoked the FSIA's commercial activity exception, 28 U.S.C. § 1605(a)(2), alleging a commercial dispute arising out of "extensive commercial negotiations" for the sale of the Collection.  D.E. 106 at 6–10.

The FAC alleged that Plaintiff was initially contacted about the Collection by an unnamed "official in the Venezuelan government," — not Mier.  *Id.* at 4; D.E. 21-3 at 2.  The FAC included new allegations nakedly designed to establish conduct of the Republic in or affecting the United States, such as that the Republic sent a letter ("Letter") on the letterhead of the "Foundation of National Museums in the Ministry of Popular Power" of the Republic, "addressed to [P]laintiff in the United States, related to [the Republic's] interest in [the] Collection," D.E. 106 at 4, and that "Venezuelan officials [then] arranged to meet with [P]laintiff in Florida, to discuss the transaction with him, and to fly him from Florida to Venezuela with [the] Collection."  *Id.* at 5–6.

On August 14, 2015, the Republic moved to dismiss the FAC for lack of subject-matter and personal jurisdiction.  D.E. 112.  Two days before oral argument on the motion, the Supreme Court decided *OBB Personenverkehr AG v. Sachs*, 577

U.S. 27 (2015), clarifying the critical requirement of the FSIA's commercial activity exception that a claim be "based upon" a commercial activity.  D.E. 133 at 13–18.

### 4.    Plaintiff's Declaration

After the hearing, Plaintiff submitted a supplemental declaration in opposition to the motion to dismiss ("Declaration").  D.E. 135.  This Declaration offered a fourth version of events — differing still further from the accounts in the Original Complaint, the Affidavit, and the FAC.  Now, the Republic first contacted Plaintiff through Mier, "a mutual acquaintance (and relative of [Plaintiff's])."  *Id.* at 3. Unnamed "officials [then] contacted him to arrange to meet" in Florida.  *Id.*  Plaintiff subsequently met in Florida with Rodriguez, Arvelo, who now was "defendant's official," and "other [unnamed] officials sent by the Venezuelan government" to "begin negotiations."  *Id.*

According to the Declaration, the "extensive negotiations" with the Republic consisted of three meetings in Florida over the course of three days, totaling nine hours, followed by month-long negotiations in Venezuela.  *Id.* at 3–5.  The first meeting occurred over dinner at a sushi restaurant in Orlando on October 14, 2007, allegedly attended by Arvelo, Rodriguez, and other unnamed "officials."  *Id.* at 3.

At the second meeting — at the Marriott — unnamed purported "officials requested [Plaintiff] travel with them to Venezuela" with the Collection, upon which Plaintiff "informed these Venezuelan officials that [his] [p]assport had expired."  *Id.*

at 4. Contrary to the FAC's assertion that Plaintiff received the Letter before the "officials'" arrival in Florida, the Declaration stated that upon learning Plaintiff's passport expired, the "Venezuelan officials arranged . . . to email to [Plaintiff] . . . a letter [from "Venezuela's Foundation of National Museums"] enlisting [his] participation in a documentary relating to Simon Bolivar" which would "enable [him] to expedite procurement of his [p]assport." *Compare* D.E. 106 at 4–5, *with* D.E. 135 at 4. The next day, Plaintiff went to an appointment allegedly "arranged by the Venezuelan officials," and obtained a new passport. D.E. 135 at 5.

Plaintiff did "all this with the understanding and agreement" that the Republic would either "reach an agreement for an amount to be paid to [Plaintiff] . . . or the [C]ollection would be returned" at an unspecified location. *Id.* at 4. For the first time, Plaintiff stated that the purported "agreement and understanding" was reached with Rodriguez. *Id.*

Plaintiff's final meeting in the United States occurred on October 16, 2007, at the Orlando airport before his departure for Venezuela. *Id.* at 5.

Plaintiff then spent approximately one month in Venezuela purportedly negotiating a sale of the Collection to the Republic, but the Declaration fails to identify with whom he negotiated. *Id.* at 5–6. Plaintiff reached a second alleged agreement in Venezuela at the conclusion of his time there. *Id.* at 6. Specifically, unidentified "officials stated they needed more time to fully examine and analyze

[the C]ollection and that they would be in touch with [Plaintiff] concerning purchase of the [C]ollection after their examination." *Id.* On November 6, 2007, Plaintiff left the Collection with the Republic in Venezuela with a second "understanding and agreement that [the Republic] . . . would contact [him] about a purchase price for the [C]ollection or would return it to [him]." *Id.* The Declaration did not identify the individual Plaintiff entrusted with the Collection, the individual with whom he purportedly reached this agreement, or where the Republic was required to return the Collection. Plaintiff "periodically contacted defendant over the next 2–3 years," but does not identify who he contacted. *Id.*

### 5. Plaintiff's Second Amended Complaint

On February 18, 2016, the District Court dismissed the FAC with leave to replead. D.E. 138, 139. On March 8, 2016, Plaintiff filed his second amended complaint ("SAC"), alleging jurisdiction under the FSIA's commercial activity exception and asserting claims for breach of contract and unjust enrichment. D.E. 140 at 13–17.

The SAC largely incorporates the allegations of the Declaration, but with yet another (fifth) convenient revision to Plaintiff's ever-changing story: contrary to the Declaration's statement that Plaintiff conveyed the Collection to the Republic pursuant to a second agreement in Venezuela, the SAC alleges that he conferred possession of the Collection to the Republic in Venezuela pursuant to an agreement

11

reached in Florida. *Compare* D.E. 135 at 6, *with* D.E. 140 at 2–3.

On March 25, 2016, the Republic moved to dismiss the SAC for lack of jurisdiction under the FSIA. D.E. 141.

### B.    The Republic's Motion to Dismiss and Interlocutory Appeal

On September 28, 2016, the District Court denied the Republic's motion to dismiss the SAC, concluding that it had subject-matter jurisdiction under the FSIA's commercial activity exception. D.E. 165 at 12–13. On October 28, 2016, the Republic timely appealed that decision. D.E. 169.

On May 10, 2018, this Court — "tak[ing] the factual allegations in the complaint as true" and "constru[ing] the factual allegations in the light most favorable to [Plaintiff]" — affirmed the District Court's decision, holding that Plaintiff adequately pled jurisdiction under the third clause of the commercial activity exception. *Devengoechea v. Bolivarian Republic of Venezuela*, 889 F.3d 1213, 1218 n.6, 1220, 1224–26 (11th Cir. 2018) (citations omitted). This Court determined Plaintiff sufficiently alleged the requisite "direct effect" in the United States because he impliedly alleged the Republic was required to pay or return the Collection to Plaintiff in the United States. *Id.* at 1224–25. This Court also held that Plaintiff adequately alleged sufficient facts that, *if true*, "allow for the conclusion that the purported representatives of Venezuela" acted with requisite authority to bind the Republic. *Id.* at 1226–28.

### C.    The Republic's Summary Judgment Motion

Discovery commenced upon remand.  *See* D.E. 208, 209, 216, 217.  On December 14, 2018, the parties moved to stay the proceedings pending settlement.  D.E. 220.  On the same day, the Republic filed its motion for summary judgment and Rule 56.1 statement.  D.E. 221–224.  Among other things, the Republic asserted that Plaintiff failed to prove subject-matter jurisdiction under the FSIA's commercial activity exception.  D.E. 221 at 8–14.  The Republic also argued summary judgment was warranted because Plaintiff could not establish his claim on the merits.  *Id.* at 14–18.  Three days later, the District Court stayed the proceedings for 60 days.  D.E 225.

### D.    Venezuela's Political Crisis

Shortly after the Republic moved for summary judgment, its domestic political situation shifted drastically, and the country plunged into a crisis that has now persisted for nearly six years.   Then-president Nicolás Maduro banned opposition parties from participating and orchestrated fraudulent presidential elections in May 2018.  *See Venezuela: A Democratic Crisis*, U.S. DEP'T OF STATE https://2017-2021.state.gov/a-democratic-crisis-in-venezuela/.   Subsequently, in early 2019, Maduro claimed victory and purported to assume a second term as Venezuela's president.  *Id.*

Venezuela's democratically elected congressional body, the 2015 National Assembly, declared Maduro's presidency illegitimate, and on January 23, 2019, established an Interim Government, led by Interim President Juan Guaidó, pursuant to Venezuela's Constitution. *See id*. The U.S. President immediately recognized the Interim Government and subsequently has reaffirmed this recognition. *Statement from President Donald J. Trump*, THE WHITE HOUSE (Jan. 23, 2019), https://trumpwhitehouse.archives.gov/briefings-statements/statement-president-donald-j-trump-recognizing-venezuelan-national-assembly-president-juan-guaido-interim-president-venezuela; *see also United States Continues to Recognize Interim President Guaido and the National Assembly in Venezuela*, U.S. DEP'T OF STATE (Jan. 5, 2021), https://cl.usembassy.gov/united-states-continues-to-recognize-interim-president-guaido-and-the-national-assembly-in-venezuela/. While the Interim Government has been disbanded, the United States continues to recognize the 2015 National Assembly as the legitimate government of Venezuela. *See Venezuela's Interim Government and the 2015 National Assembly*, U.S. DEP'T OF STATE (Jan. 3, 2023), https://www.state.gov/venezuelas-interim-government-and-the-2015-national-assembly/.

In February 2019 and in response to the Maduro regime's lawless conduct, the 2015 National Assembly enacted the Statute to Govern a Transition to Democracy to Reestablish the Full Force and Effect of the Constitution of the

Bolivarian Republic of Venezuela.  *See Jimenez v. Palacios*, 250 A.3d 814, 824–25 (Del. Ch. 2019), *aff'd* 237 A.3d 68 (Del. 2020).  A primary goal of this Democracy Transition Statute is to protect and preserve the assets of the Republic for the Venezuelan people.  *See id.*  In support of the Interim Government, the United States in August 2019 extended economic sanctions to the illegitimate Maduro regime and affiliated individuals and entities to prevent them from pilfering the Republic's assets and to preserve those assets for the Venezuelan people.  *See, e.g.*, Exec. Order No. 13884, 80 Fed. Reg. 152 (Aug. 7, 2019).

Despite the efforts of the 2015 National Assembly and former Interim Government, Maduro and his inner circle continue to maintain de facto control over organs of government.  They have perpetuated the crisis over the past six years by, for example, continuing to "imprison civic, military, and political leaders" and using "the distribution of food as a tool for social control."  *See Venezuela: A Democratic Crisis*, U.S. Dep't of State.

To address the crisis in Venezuela, the former Interim Government, the 2015 National Assembly, and other civic and political leaders within the opposition government (together, the "Unitary Platform") have diligently pursued free and fair elections in Venezuela.  For example, in October 2023, the Unitary Platform negotiated and entered into an agreement with the Maduro regime in Barbados ("Barbados Agreement") to support competitive elections in which all political

parties could select their own presidential candidates.  *See Venezuelan Supreme Court Rulings and the Barbados Agreement*, U.S. DEP'T OF STATE (Jan. 27, 2024), https://www.state.gov/venezuelan-supreme-court-rulings-and-the-barbados-agreement/.  The Maduro regime, however, violated this agreement and banned opposition candidates from participating in the elections.  *Id.*

In addition to fighting these existential political battles, the 2015 National Assembly is responsible for defending the Republic in numerous litigations in the United States, many of which arise from the actions of the Maduro and Chavez regimes.  *See, e.g.*, *Stansell v. Revolutionary Armed Forces of Colombia*, No. 16-mc-405 (S.D.N.Y.) (seeking to execute judgment against FARC for alleged actions of Chávez and Maduro regimes).  Most notably, the 2015 National Assembly is fighting to protect the Republic's ultimate ownership interest in its largest U.S. asset — Citgo Petroleum Corporation — against a forced judicial sale in the U.S. District Court for the District of Delaware.  *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 17-mc-151 (D. Del.).

## E.    Plaintiff's Motion to Stay

Amidst the political chaos surrounding the 2018 fraudulent elections, Plaintiff attempted to negotiate with the Maduro regime to settle this litigation, culminating in an agreement purportedly executed on December 14, 2018.  D.E. 229 at 5.  The settlement agreement provided that, if payment was not made within thirty days of

16

execution of the agreement, the agreement was "null and void." D.E. 229-6. For unknown reasons, Plaintiff believed payment of the settlement required obtaining an OFAC license despite the absence of any applicable sanctions impeding such an agreement at that time. D.E. 226. Thus, on February 27, 2019, more than one month after the settlement agreement had become null and void, Plaintiff moved to stay the action purportedly to pursue an OFAC license to collect the settlement, which motion the District Court granted. D.E. 226, 227.

Nearly three years later, Plaintiff moved to reopen the action because the Republic purportedly failed to pay the settlement. D.E. 229 at 1-5. Plaintiff contended he contacted the Republic's "counsel" and the Republic "refuse[d] to pay." *Id.* Plaintiff's account conveniently omits the reason for this "refus[al]": the Republic's former counsel informed Plaintiff they could no longer act on behalf of the Republic due to the derecognition of the Maduro regime. D.E. 238 at 2.

On December 30, 2021, the District Court reopened the case, only for Plaintiff to request an extension of time to oppose summary judgment purportedly to "provide formal notice" to the Interim Government, so the District Court closed the case again. D.E. 231, 232, 233, 235. On September 23, 2022, Plaintiff filed a notice asserting that he had provided notice to the Interim Government. D.E. 236.

### F.    Withdrawal of Counsel for the Republic

On October 28, 2022, while the case was still closed, former counsel for the Republic moved to withdraw because it was not authorized by the Interim Government to represent the Republic.  D.E. 238.  Counsel explained that it was first authorized to appear by the Maduro regime, which at that time had been recognized by the United States.  *Id.* at 1.  Upon the derecognition of the Maduro regime, counsel explained that it stopped taking instructions from the Maduro regime and informed Plaintiff's counsel they could no longer act for the Republic.  *Id.* at 2–3.

The District Court authorized withdrawal on February 7, 2023.  D.E. 255.  The Republic did not retain new counsel or otherwise appear until the undersigned was engaged to notice this appeal on January 3, 2024.  In other words, from October 2022 through January 2024, the Republic was not represented by counsel in this case.

### G.    Denial of Summary Judgment and Trial

The District Court reopened the case at Plaintiff's request on March 30, 2023.  D.E. 259.  On May 2, 2023, Plaintiff filed a six-page opposition to the Republic's December 14, 2018, motion for summary judgment asserting the District Court had subject-matter jurisdiction under all three clauses of the commercial activity exception.  D.E. 264–266.  Plaintiff also submitted a supporting affidavit averring for the first time, *eleven years later*, that the purported agreement "always" entailed returning the Collection to Plaintiff "at [his] home in Orlando, Florida."  D.E. 264

18

at 10.  The affidavit also remedied prior factual problems in Plaintiffs' story, conveniently describing Mier as an "official[] in the Venezuelan government," and recounting that Rodriguez "introduced herself, identified the office which she held in the Venezuelan government, and introduced the persons with her as officials in the Venezuelan government." *Id.* at 2.

On July 10, 2023, the District Court found disputed facts remained and denied the Republic's motion for summary judgment.  D.E. 270 at 5–10.  That same day, the District Court scheduled trial for December 4, 2023.  D.E. 269.  And on November 28, 2023, Plaintiff filed his proposed findings of fact and conclusions of law.  D.E. 288.  The Republic remained unrepresented and therefore submitted no proposed findings of fact nor conclusions of law.

Although a sovereign cannot appear without counsel, the District Court held a "bench trial" on December 3, 2023, and treated the Republic as appearing pro se. The trial lasted approximately 90 minutes during which Plaintiff's counsel examined (1) one of Plaintiff's attorneys, Marco Ferri; (2) Plaintiff; and (3) Plaintiff's damages expert, John Reznikoff.  *See* D.E. 310 at 9:17–63:9.

Before hearing any evidence, the District Court opened the proceedings by granting Plaintiff's request to dispense with the automatic 30-day stay pursuant to Rule 62 of the Federal Rules of Civil Procedure of enforcement of a judgment that did not yet exist "[b]ased on [Plaintiff's] proposed findings of fact and conclusions

of law." *Id.* at 4:18–22, 7:1–2.

Following the District Court's ruling, Plaintiff called Ferri, who testified to his purported efforts to negotiate the return of the Collection from the Republic. Indicating that it had already resolved liability, the District Court interjected during Ferri's testimony to ask whether Ferri incurred fees for his efforts that should be included in Plaintiff's claimed damages. *Id.* at 13:6–14:3. When Plaintiff's counsel responded that Plaintiff was not seeking attorney's fees and would not want to introduce that issue into the damages calculus, the District Court argued that the fees would not be "fees for bringing this case," reiterating its belief that Plaintiff was entitled to recoup Ferri's fees. *Id.* at 13:17–14:3.

Plaintiff then testified to his version of events, including that he contacted Mier — now identified as a "university expert" (rather than his relative) — by email to ask him questions regarding the significance of the Collection. *Id.* at 18:11–14. Plaintiff testified that Mier responded that he was traveling to Orlando with another expert to examine the Collection. *Id* at 18: 22–25.

Plaintiff testified he then met with Mier, Rodriguez, "Juan, his wife, [and] a few other people," at the Hyatt in Orlando, Florida (rather than at the sushi restaurant or at the Marriott as he testified in his Declaration or the Hilton as he testified in his Affidavit). *Compare id.* at 19:1–7, *with* D.E. 135 at 3–4 *and* D.E. 21-3 at 2. Plaintiff also testified in sweeping fashion that these individuals represented themselves as

appearing on behalf of the Republic but failed to describe how they purportedly did so.  D.E. 310 at 19:13–19.  Plaintiff then immediately contradicted that testimony (and his prior summary judgment affidavit) by confirming that he was unaware of Rodriguez's position in the Venezuelan government, but he just knew she had one. *Id.* at 19:16–19; *see also* D.E. 264 at 2.

Plaintiff further testified he negotiated with the purported Venezuelan officials in Orlando, but now, only for "[f]our, five hours" instead of nine.  D.E. 310 at 21:1–9.  These individuals purportedly asked Plaintiff to fly to Venezuela with his Collection and assisted him in getting a passport "virtually overnight."  *Id.* at 21:10–17.  During those meetings Plaintiff reached an agreement with the Republic to "get compensated for the [C]ollection," or alternatively, the Collection "would be returned back to Orlando, Florida."  *Id.* at 21:24–22:8.  Plaintiff then embarked for Venezuela with "[s]ix or seven people" all of whom represented they were Venezuelan officials.  *Id.* at 22:14–19.  Again, Plaintiff failed to identify the manner in which these individuals purportedly did so.

Plaintiff testified he was in Venezuela for "three weeks" or "30 days" to "verify, authenticate the documents."  *Id.* at 22:20–23:1.  During the month-long investigation, Plaintiff reviewed the Collection for three-to-four hours each day.  *Id.* at 27:4–28:3.  And while he was in Venezuela, Plaintiff maintained possession of the Collection until he was told to bring the Collection to Chávez's house.  *Id.* at

30:4–8.  Plaintiff testified that, while there, an unidentified individual asked him to leave the Collection, which Plaintiff did before returning to the United States.  *Id.* at 30:4–17.   After leaving Venezuela, Plaintiff continued to negotiate with "the Venezuelan government" via email for close to three years, but failed to identify with whom he purportedly negotiated.  *Id.* at 30:9–19.

Plaintiff's damages expert then testified that his valuation of the Collection was premised on interviews he conducted with Plaintiff regarding the contents of the Collection and photographs of the Collection provided by Plaintiff.  *Id.* at 38:19–39:5.   The District Court interjected during this testimony to inquire about a Christie's 1988 auction of another collection of Bolívar memorabilia and artifacts sold for $2.9 million.  *Id.* at 42:1–7.   The District Court asked for an updated valuation of that collection, which the expert stated was approximately $10 to $12 million.  *Id.* at 42:1–21.   The District Court then stated that the collection sold by Christie's "suggest[ed] to [him] that the overall value of [the Collection] may be more than $8.8 million," and opined that the Collection "is at least, if not more, valuable than what the 1988 [collection] would be valuable today to the Venezuelan government."  *Id.* at 44:15–20, 44:23–45:2.   The District Court asked whether the expert's $8.8 million valuation was "a conservative number" and for a range that would not be conservative.  *Id.* at 45:4–8.  Accepting the invitation, Plaintiff's expert increased his valuation of the Collection to $10 to $15 million.  *Id.* at 45:9–15.

Following the expert's testimony, the District Court concluded the trial.

The next day, the District Court issued its findings of fact and conclusions of law, which are fundamentally identical to Plaintiff's proposal. D.E. 293. The District Court found that the Republic was proceeding in the action pro se. *Id.* at 8 n.3. The District Court also found that it had jurisdiction under all three clauses of the FSIA's commercial activity exception, reversing course by finding for the first time that the second clause — concerning "an act performed in the United States in connection with a commercial activity of the foreign state elsewhere," 28 U.S.C. § 1605(a)(2) — applied. *Id.* at 11. Under all three clauses, the District Court failed to determine whether the "Venezuelan officials" had the authority to bind the Republic.

Regarding the first clause of the commercial activity exception, which applies to actions "based upon a commercial activity carried on in the United States by the foreign state," 28 U.S.C. § 1605(a)(2), the District Court found that Plaintiff's claims were based upon Venezuela's commercial activity in the United States because the parties engaged in "extensive negotiations" that culminated in an agreement in the United States. D.E. 293 at 9. The District Court failed to conduct the Supreme Court's "gravamen" test propounded in *OBB*.

Regarding the second clause, the District Court found that the Republic's "numerous acts" in the United States "clearly" formed the basis of Plaintiff's claim

23

and were "in connection with" the Republic's commercial activity outside of the United States, namely the Republic's examination and storage of Plaintiff's collection in Venezuela. *Id.* at 10. The District Court did not provide any further reasoning.

Finally, regarding the third clause, which applies to "an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States," 28 U.S.C. § 1605(a)(2), the District Court found that (1) Plaintiff's claim was based upon the Republic's decision not to pay or return the Collection in Venezuela, (2) which was decided in connection with commercial activity outside the United States, namely, the Republic's negotiation for the Collection, which was an act in which private participants in the marketplace could engage, and (3) the direct effect in the United States was the Republic's breach of its obligation to return or pay for the collection in the United States. *Id.*

To formalize its order at the start of trial, the District Court dispensed with a Rule 62(a) stay of enforcement and permitted Plaintiff to commence registration of his judgment under 28 U.S.C. § 1963. D.E. 294.

The District Court then issued Final Judgment (D.E. 295) in favor of Plaintiff for $9.5 million in compensatory damages, plus Florida's statutory prejudgment interest amounting to $7,628,630.10, for a total sum of $17,128,630.10, plus taxable

costs.  D.E. 295.

On December 22, 2023, Plaintiff moved on an expedited basis for an order under 28 U.S.C. § 1610(c), purportedly to collect on his judgment by participating as a creditor in the forced judicial sale of Venezuela's downstream interest in Citgo through the *Crystallex* proceedings in the District of Delaware.  D.E. 298 at 3.  The District Court granted the motion that day.  D.E. 299.  Plaintiff then attempted to register his judgment and moved for a writ of attachment in Delaware.  *See Devengoechea v. Bolivarian Republic of Venezuela*, No. 23-mc-609 (D. Del.), D.E. 4.  The court denied Plaintiff's motion, holding that Plaintiff failed to establish an exception to the Republic's attachment and execution immunity under 28 U.SC. § 1610.  *See id.* at D.E. 47.  Appeal of that order is pending before the Third Circuit. *See id.* at D.E. 59.

On January 3, 2024, the Republic timely noticed its appeal.  D.E. 307.

## STANDARD OF REVIEW

This Court reviews a district court's legal determination concerning subject-matter jurisdiction under the FSIA *de novo* and factual findings for clear error.  *Calzadilla v. Banco Latino Internacional*, 413 F.3d 1285, 1287 (11th Cir. 2005).  This Court reviews a district court's finding of personal jurisdiction *de novo*. *Tufts v. Hay*, 977 F.3d 1204, 1208 (11th Cir. 2020).  This Court reviews the determination of damages for abuse of discretion, and legal questions related to the

interpretation of damages *de novo*. *Regions Bank v. Kearney*, 597 F. App'x 1012, 1014 (11th Cir. 2014); *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n*, 117 F.3d 1328, 1339 (11th Cir. 1997).

## SUMMARY OF THE ARGUMENT

As a foreign state, the Republic is presumptively immune from the jurisdiction of U.S. courts. To establish an exception to the Republic's immunity, Plaintiff has the burden to "show (and not just arguably show)" that one of the FSIA's enumerated exceptions to sovereign immunity applies. *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 187 (2017). Here, because the Republic was not represented by counsel and therefore not appearing in the action, the District Court also was required to adhere to the FSIA's exclusive procedures for entering a default judgment against a foreign state, 28 U.S.C. § 1608(e). The District Court mistakenly proceeded as if the Republic could appear pro se, overlooking § 1608(e).

Section 1608(e) requires Plaintiff to establish his right to relief, including establishing the District Court's subject-matter jurisdiction, by compelling admissible evidence before the court may enter a default judgment. Plaintiff purported to establish the District Court's subject-matter jurisdiction under all three clauses of the FSIA's commercial activity exception, 28 U.S.C. § 1605(a)(2), which provides an exception to sovereign immunity for actions based upon (i) commercial

26

activity carried out in the United States; (ii) acts performed in the United States in connection with commercial activity elsewhere; or (iii) commercial acts performed outside the United States that cause direct effects in the United States. But Plaintiff failed to submit evidence to establish that even one clause applied.

*First*, Plaintiff failed to submit compelling, admissible evidence to prove that the individuals Plaintiff described as Venezuelan "officials" were in fact officials acting with authority to bind the Republic. Because Plaintiff failed to establish these individuals' official status, the District Court lacked subject-matter jurisdiction over the Republic under *any* clause of the commercial activity exception based on conduct of these individuals.

*Second*, even if Plaintiff could establish the authority of the purported officials, Plaintiff still failed to prove by compelling, admissible evidence that any of the three clauses of the commercial activity exception applied. Regarding the first clause, Plaintiff failed to establish that both (1) the gravamen of his suit concerned commercial activity of the Republic in the United States and (2) the Republic's purported commercial activity had "substantial contact" with the United States. Regarding the second clause, Plaintiff neither proved the Republic committed an "act," which must be non-commercial, "in the United States," nor that such act formed the basis of Plaintiff's suit. Finally, regarding the third clause, Plaintiff failed to establish the Republic's purported commercial activity in Venezuela caused a

"direct effect" in the United States.  And, because Plaintiff failed to establish any exception to the Republic's sovereign immunity, Plaintiff likewise failed to establish the District Court had personal jurisdiction over the Republic.

The District Court also erred when assessing Plaintiff's damages.  *First*, the District Court committed reversible error by applying Florida law to Plaintiff's damages award.  Under § 1606 of the FSIA, the District Court was required to examine Florida's choice-of-law rules to determine the law applicable to Plaintiff's damages.  Florida's choice-of-law rules, which apply the principle of *lex loci contractus*, compel the application of Venezuelan law (rather than Florida law) because the bailment was formed (if anywhere) in Venezuela.  *Second*, the District Court abused its discretion when it encouraged Plaintiff's damages expert to increase his valuation of the Collection.

## ARGUMENT

## I.  THE DISTRICT COURT LACKED SUBJECT-MATTER JURISDICTION UNDER THE FSIA TO ENTER JUDGMENT AGAINST THE REPUBLIC

The FSIA provides the "sole basis" for subject-matter jurisdiction over actions against foreign sovereigns in U.S. courts.  *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989).  Under the FSIA, the Republic is presumptively "immune from the jurisdiction of the courts of the United States," 28 U.S.C. § 1604, unless Plaintiff "show[s] (and not just arguably show[s])" that one of

28

the enumerated exceptions to sovereign immunity in §§ 1605 to 1607 applies. *Helmerich*, 581 U.S. at 187; *see also Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993).

> Here, Plaintiff invoked the commercial activity exception, which provides:

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case in which the action is based upon [i] a commercial activity carried on in the United States by the foreign state; or upon [ii] an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon [iii] an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2).

In affirming denial of the motion to dismiss, this Court accepted Plaintiff's allegations as true and construed them in Plaintiff's favor to hold that the SAC adequately alleged subject-matter jurisdiction under the third clause of this provision. *See Devengoechea*, 889 F.3d at 1218 n.6, 1220, 1226.

Consistent with the ordinary rule that "the party asserting federal jurisdiction when it is challenged has the burden of establishing it," *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006), on remand, Plaintiff was required to "prove," "as a jurisdictional matter," that he had a "valid claim" under the commercial activity exception, *Helmerich*, 581 U.S. at 178 (discussing expropriation exception). *See also Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 444 (2d Cir. 2019) (applying the "usual rule[]" that plaintiff bears the burden of proving subject-matter

jurisdiction).  But the District Court misapplied the law and failed to hold him to that standard.

The District Court's errors began with its decision to hold a "trial" when the Republic was unrepresented, on the legally impossible premise that the Republic was proceeding pro se.  *See* D.E. 253 at 1–2; D.E. 293 at 8 n.3.  Yet "the law for the better part of two centuries" has clearly been that an artificial entity such as a corporation or sovereign "may appear in the federal courts only through licensed counsel."  *Rowland v. Cal. Men's Colony*, 506 U.S. 194, 201–02 (1993); *see also Rhuma v. Libya*, 2022 WL 686432, at *1 n.4 (E.D. Cal. Mar. 8, 2022) ("Foreign states and other governmental entities may not appear in pro se."); *see also* Minute Order, *Gosain v. Republic of India*, No. 18-cv-02427 (D.D.C. May 13, 2021) (similar).

Erroneously believing it was not in a default proceeding, the District Court disregarded the heightened procedures in § 1608(e) of the FSIA, which prohibits the entry of default judgment against a foreign state "unless the claimant establishes his claim or right to relief by *evidence satisfactory to the court*."  28 U.S.C. § 1608(e) (emphasis added).  Importantly, "Congress promulgated § 1608(e) to provide foreign sovereigns with the same protections from default judgments that the federal government enjoys under Fed. R. Civ. P. 55(e)."  *Com. Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 242 (2d Cir. 1994).  The heightened burden under the FSIA thus

ensures "respect for the principle of sovereign immunity." *Reed v. Islamic Republic of Iran*, 845 F. Supp. 2d 204, 211 (D.D.C. 2012). The District Court was required to follow § 1608(e), given the Republic lacked representation at the time of the "trial" and ensuing judgment. Plaintiff likewise was required to establish his right to relief, including establishing the court's subject-matter jurisdiction, by "compelling, admissible evidence." *Kim v. Democratic People's Republic of Korea,* 774 F.3d 1044, 1049, 1050–51 (D.C. Cir. 2014).

The "trial" in this case fell far short of § 1608(e)'s requirements. At a minimum, the record must demonstrate the District Court considered § 1608(e)'s heightened standard when rendering a default judgment against a foreign state. *Compania Interamericana Exp.-Imp., S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996). And because the record already contained evidence undermining Plaintiff's claim — including Plaintiff's prior Affidavit and Declaration and the Republic's summary judgment evidence — Plaintiff was required to adduce evidence sufficient to overcome the countervailing weight of the record against his claims. *Cf. In re Garner,* 56 F.3d 677, 680 (5th Cir. 1995) ("[I]n a post-answer default judgment situation, judgment cannot be entered on the pleadings, but the plaintiff in such a case must offer evidence and prove his case as in a judgment upon a trial.") (cleaned up), *abrogated on other grounds by Kawaauhau v. Geiger*, 523 U.S. 57 (1998).

But during the one-sided 90-minute hearing, Plaintiff failed to submit compelling, admissible evidence to demonstrate that *any* clause of the commercial activity exception applied. Specifically, he failed to show (i) that any of the individuals he characterized as Venezuelan officials were, in fact, Venezuelan officials and that they had the requisite authority to bind the Republic; (ii) that a bailment agreement — an essential component to his assertion of jurisdiction under the commercial activity exception — ever formed; or (iii) that his action was "based upon" any conduct by the Republic that could satisfy any of the three clauses of the FSIA's commercial activity exception. The District Court's judgment therefore is void and must be vacated, and the action dismissed with prejudice.

## A. Plaintiff failed to prove this action is "based upon" a commercial act of the Republic.

Plaintiff purported to establish subject-matter jurisdiction under the FSIA's commercial activity exception on the grounds that he and the Republic entered a purported bailment agreement and the Republic breached that agreement. *See* D.E. 140, 266. Thus, Plaintiff was required to prove that the individuals alleged to be "Venezuelan officials" with whom he reached the alleged agreement had the requisite authority to bind the Republic. *See Devengoechea*, 889 F.3d at 1226–27. Plaintiff was also required to prove these individuals in fact formed a bailment agreement and then breached it. He failed to make either showing.

### 1. Plaintiff failed to prove the purported agents of the Republic had authority to bind the Republic.

The District Court failed to comply with, or even acknowledge, § 1608(e)'s requirements and accepted at face value Plaintiff's self-serving and inadmissible testimony that Mier, Arvelo, and Rodriguez were "Venezuelan officials." D.E. 293 (stating repeatedly and in conclusory fashion that individuals were "Venezuelan officials").

In the Republic's prior appeal, this Court explained that, "at th[e] motion-to-dismiss stage," apparent authority could suffice to establish a waiver of immunity. *See Devengoechea*, 889 F.3d at 1226–27. The panel believed it was bound by the "prior-panel-precedent rule" (*id.* at 1227), to follow the decision in *Aquamar S.A. v. Del Monte Fresh Produce N.A.*, 179 F.3d 1279 (11th Cir. 1999), that "apparent authority" sufficed to bind a foreign sovereign. But *Aquamar* turned on "the unique qualities and powers of an ambassador" and does not pertain in cases that "do[] not involve the acts of an ambassador." *GDG Acquisitions LLC v. Gov't of Belize*, 849 F.3d 1299, 1307 (11th Cir. 2017). Moreover, *Devengoechea*'s reasoning rested on the concern that inquiring into actual authority at the outset of litigation would frustrate the purposes of the FSIA. 889 F.3d at 1226–27. But that concern loses its force when the question of actual authority is resolved at trial or under § 1608(e). Thus actual authority, rather than apparent authority, is necessary to establish an act of the Republic under the commercial activity exception in this posture.

33

Regardless, even if mere apparent authority were sufficient, Plaintiff failed to put forth evidence that the individuals in question acted with the requisite apparent authority. In general, "apparent authority is 'created as to a third person by written or spoken words or any other conduct *of the principal* which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." *Arriaga v. Fla. Pac. Farms, L.L.C.*, 305 F.3d 1228, 1245 (11th Cir. 2002) (emphasis added). This authority "does not arise from the subjective understanding of the person dealing with the purported agent, nor from appearances created by the purported agent himself; instead, 'apparent authority' exists only where the *principal* creates the appearance of an agency relationship." *Taylor Grp. v. Indus. Distribs. Int'l Co.*, 859 F. App'x 439, 449 (11th Cir. 2021) (emphasis added) (quotations omitted).

Plaintiff failed to put forth evidence of *any* manifestation by the Republic. Rather, Plaintiff's bare assertion that he entered a contract with "Venezuelan officials" rests principally on inadmissible hearsay statements that the *purported agents* "represented themselves" to be Venezuelan officials. *See, e.g.*, D.E. 310 at 19:13–15, 22:14–19. Plaintiff testified during trial that there were "six or seven people" on the private jet with him that "all represented to [him] to be Venezuelan government officials." *Id.* at 22:14–19. Plaintiff thereafter contradicted his own testimony by stating that at the time he was "not sure" of Ms. Rodriguez's position

in the government, but he thought she had some position.  *Id.* at 19:18–19.

These statements are inadmissible hearsay, and therefore, insufficient to carry Plaintiff's burden under § 1608(e).  *See Kim*, 774 F.3d at 1049 (holding § 1608(e) requires admissible evidence).  Moreover, these statements rest on actions of the purported agent, not the Republic, and are insufficient to create apparent authority. As a result, the District Court lacks subject-matter jurisdiction under *all three* clauses of the commercial activity exception.  The judgment is therefore void.

### 2. Plaintiff failed to prove the existence of a bailment agreement.

The Supreme Court has instructed courts considering suits under the FSIA's commercial activity exception to examine "the 'particular conduct' that constitutes the 'gravamen' of the suit" to determine whether the suit is "based upon" conduct falling into one of the exception's three clauses.  *OBB*, 577 U.S. at 35; *see Devengoechea*, 889 F.3d at 1222 (same).  That is, the FSIA's "based upon" inquiry examines "those elements of a claim that, if proven, would entitle a plaintiff to relief under [its] theory of the case." *Nelson*, 507 U.S. at 357.

The core of Plaintiff's suit is the alleged breach of a bailment agreement between Plaintiff and the Republic related to the Collection.  *See Devengoechea*, 889 F.3d at 1223–24 (holding same).  To establish subject-matter jurisdiction, Plaintiff was thus required, but failed, to prove a valid claim for breach of a bailment agreement.  *See Helmerich*, 581 U.S. at 178.

35

The District Court first erred by analyzing the validity of Plaintiff's bailment claim under Florida law, when it was required to apply Florida's choice-of-law rules, which point to Venezuelan (and not Florida) law. *See Cassirer v. Thyssen-Bornemisza Collection Found.*, 596 U.S. 107, 114–16 (2022) (holding FSIA requires applying the forum's choice-of-law rules to determine which substantive law applies to claims against a sovereign). The Florida Supreme Court "has unambiguously indicated its intent to . . . to adhere to the traditional rule of *lex loci contractus*." *Fioretti v. Mass. Gen. Life Ins. Co.*, 53 F.3d 1228, 1235 (11th Cir. 1995). This rule directs that "a contract . . . is governed by the law of the state in which the contract is made, *i.e.*, where the last act necessary to complete the contract is done." *Id.*

According to Plaintiff's own testimony and contrary to his assertion that an agreement was formed in Florida, any bailment agreement would have been consummated when Plaintiff allegedly handed over the Collection in Venezuela. *See, e.g.*, D.E. 310 at 21:24–22:8. That is because a bailment is not formed until the delivery of the goods sought to be bailed. *See Fireman's Fund Ins. Co. v. Panalpina, Inc.*, 153 F. Supp. 2d 1339, 1343 (S.D. Fla. 2001) ("[B]ailment does not arise unless delivery to the bailee is complete and he has exclusive possession of the bailed property, even as against the property owner.") (citing *Thyssen Steel Co. v. M/V Kavo Yerakas*, 50 F.3d 1349, 1355 (5th Cir. 1995)); *see also* 8A Am. Jur. 2d Bailments § 1 (West 2024) (similar).

36

The District Court apparently credited Plaintiff's testimony that the purported agreement was constituted in Florida. *See* D.E. 293 at 5. But one fact that has been consistent across Plaintiff's numerous accounts in this 12-year litigation is that he maintained possession of his Collection until he left Venezuela at the end of his month-long stay. *See* D.E. 21-3, 135, 264; D.E. 310 at 30:4–13. Thus, the bailment was formed (if anywhere) in Venezuela, and Florida's choice-of-law rules compel the application of *Venezuelan* law, not Florida law. *See In re Citation Corp.*, 349 B.R. 290, 295 (Bankr. N.D. Ala. 2006) (analyzing whether contract at issue was a bailment under Texas law because the contract was formed in Texas).

Regardless, even under Florida law, Plaintiff failed to show that a bailment was formed *at all*. A bailment exists only where the bailor can identify the specific items to be bailed. *See Rosner v. United States*, 231 F. Supp. 2d 1202, 1217 (S.D. Fla. 2002). Mere identification of a general collection of property is not sufficient. *Id.* Rather, a plaintiff must "identify those specific items" that form the basis of a bailment. *Id.*

But Plaintiff admits he cannot identify the items in the Collection and concedes he never inventoried the Collection. *See* D.E. 222-3 at 3; D.E. 222-1 at 90:1–14; D.E. 200-1 at 59. At trial, Plaintiff produced photographs purporting to show approximately ten documents (D.E. 21-4 at 9–20, 72–77), a medal, pair of tassels, and lock of hair (D.E. 21-4 at 23, 71). Only one of the documents

photographed by Plaintiff purports to show the signature of Bolívar — a commercial shipping license with no apparent historical value.  D.E. 21-4 at 74–75.  Yet Plaintiff offered speculative testimony that 405 documents in the Collection were signed by Bolívar, despite admitting that he only ever reviewed 50 to 70 documents in the Collection.  D.E. 21-4 at 75–77; D.E. 21-5; D.E. 222-1 at 17:11-14, 124:19-23.  Additionally, Plaintiff's speculative testimony is contradicted by Mr. Mier's statement that there were "very few Bolivar" documents in the Collection.  D.E. 200-1 at 38; D.E. 222-1 at 123:22–23.  This is insufficient to prove the existence of a bailment agreement under any circumstances, much less § 1608's heightened standard.  *Cf. Howard v. Hyundai Motor Mfg. Ala.*, 754 F. App'x 798, 804 (11th Cir. 2018) ("A plaintiff must present more than a mere scintilla of evidence, and cannot rest his contentions on speculation or conjecture.").  For this additional reason, the District Court lacks subject-matter jurisdiction under any of the three clauses of the commercial activity exception, the judgment is void and must be vacated, and the action dismissed with prejudice.

**B.    Plaintiff failed to prove that the first clause of the commercial activity exception applied.**

**1.    Plaintiff failed to prove the gravamen of his suit is in the United States.**

To prove an exception to the Republic's immunity under the first clause of the commercial activity exception, Plaintiff's suit must be "based upon" the Republic's

"commercial activity in the United States." Federal courts consistently have held that, to satisfy the first two clauses of the commercial activity exception, the gravamen of the complaint must be located in the United States. *See Jam v. Int'l Fin. Corp.*, 3 F.4th 405, 409 (D.C. Cir. 2021) (holding first two clauses inapplicable where gravamen was in India, not the United States); *see also MMA Consultants 1, Inc. v. Republic of Peru*, 719 F. App'x 47, 53 (2d Cir. 2017) (holding first clause inapplicable where gravamen outside United States); *Packsys, S.A. de C.V. v. Exportadora de Sal, S.A. de C.V.*, 899 F.3d 1081, 1092 n.10 (9th Cir. 2018) (same).

By Plaintiff's own admission, however, the gravamen of Plaintiff's suit is in Venezuela, not the United States. Specifically, as described above, Plaintiff's suit is based upon an alleged breach of a bailment agreement formed *in Venezuela*, which the Republic purportedly breached when it allegedly failed to return the Collection *in Venezuela*. *See Devengoechea*, 889 F.3d at 1223–24 ("Devengoechea's lawsuit is based on an act that occurred outside the United States—namely, Venezuela's decision not to pay Devengoechea for the Collection or to return the Collection to him."); *see also, e.g.*, D.E. 264 (averring Plaintiff conferred possession of Collection in Venezuela, and Republic decided to keep Collection without paying). Plaintiff's action thus is not based upon the formation of a bailment in Florida, as the District Court concluded. *See* D.E. 293 at 9. The first clause of the commercial activity exception therefore cannot apply. *See Jam*, 3 F.4th at 409.

### 2. Plaintiff failed to prove the Republic's alleged commercial activity had "substantial contact" with the United States.

The first clause of the commercial activity exception further requires Plaintiff prove the Republic engaged in "commercial activity carried on in the United States," 28 U.S.C. § 1605(a)(2), which is limited to "commercial activity carried on by such state and having *substantial contact* with the United States." 28 U.S.C. § 1603(e) (emphasis added). The "substantial contact" standard requires more than "isolated or transitory contacts" in the United States. *See Zedan v. Kingdom of Saudi Arabia,* 849 F.2d 1511, 1513 (D.C. Cir. 1988).

The requisite "substantial contact" means more than "isolated or transitory contacts" in the United States. *See Zedan v. Kingdom of Saudi Arabia,* 849 F.2d 1511, 1513 (D.C. Cir. 1988). Preliminary negotiations are insufficient. *See Odhiambo v. Republic of Kenya,* 764 F.3d 31, 36 (D.C. Cir. 2014) ("[M]ere business meetings in the United States do not suffice to create substantial contact with the United States"), *abrogated on other grounds by Rosenkrantz v. Inter-American Development Bank,* 35 F.4th 854 (D.C. Cir. 2022); *Terenkian v. Republic of Iraq,* 694 F.3d 1122, 1133 (9th Cir. 2012) (holding "foreign nation's contract negotiations" "are insufficiently significant" to constitute substantial contact); *Soudavar v. Islamic Republic of Iran,* 186 F.3d 671, 673-74 (5th Cir. 1999) (organizing meeting in New York did not constitute substantial contact); *General Elec. Cap. Corp. v. Grossman,* 991 F.2d 1376, 1383–84 (8th Cir. 1993) (preliminary

meeting in Minnesota was not a substantial contact); *Gerding v. Republic of France,* 943 F.2d 521, 527 (4th Cir. 1991) (defendant's attendance at meeting in New Jersey not substantial contact); *Mar. Int'l Nominees Establishment v. Republic of Guinea,* 693 F.2d 1094, 1109 (D.C. Cir. 1982) (concluding "two isolated meetings" nothing more than "transitory and insubstantial contact"); *Schoeps v. Bayern,* 611 F. App'x 32, 34 (2d Cir. 2015) (holding preliminary meeting conducted by individuals lacking apparent authority insufficient to create substantial contact with the United States).

Plaintiff's evidence suggests, at best, that the individuals Plaintiff believed were "Venezuelan officials" engaged in preliminary negotiations in the United States. Plaintiff testified about "four [to] five hours" of negotiations with "Venezuelan officials" which resulted in an agreement to travel to Venezuela to further inspect the Collection and continue negotiations. *See, e.g.*, D.E. 310 at 21:1–9 (discussing negotiations lasting "four, five hours" with "Venezuelan officials" in Florida); D.E. 264 at 4 (stating negotiations led to agreement to travel to Venezuela so that "the parties would reach an agreement" to purchase the Collection); D.E. 135 at 5 (same). Though Plaintiff asserts these negotiations culminated in the operative agreement, the bailment was not formed until one month later in Venezuela. *See supra* § I.A.2. The negotiations thus are plainly preliminary in nature and constitute nothing more than a "commitment to talk further." *Schoeps*, 611 F. App'x at 34. Plaintiff thus failed to prove the Republic's purported acts had "substantial contact"

with the United States.  *See id.*

### C.    Plaintiff failed to prove that the second clause of the commercial activity exception applied.

The second clause of the commercial activity exception "is generally understood to apply to *non-commercial* acts in the United States that relate to commercial acts abroad." *Kensington Int'l, Ltd. v. Itoua*, 505 F.3d 147, 157 (2d Cir. 2007) (emphasis in original); *see also Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 892 n.5 (5th Cir. 1998) (citing *Nelson,* 507 U.S. at 358).  And, like the first clause, Plaintiff's claim must be "based . . . upon," the non-commercial act performed in the United States in connection with commercial activity elsewhere — *i.e.*, the non-commercial act must form the gravamen of Plaintiff's suit. *See* 28 U.S.C. § 1605(a)(2): *see also Odhiambo*, 764 F.3d at 37–38 (holding "based upon" means the same thing in the first and second clauses).

The extent of the District Court's analysis was a vague statement that the Republic performed "numerous acts" in the United States.  D.E. 293 at 10.  The final judgment did not identify which, if any, of those acts are non-commercial, and whether Plaintiff's suit is "based upon" those acts.  *Id.*

Plaintiff put forth no credible, admissible evidence of any *non-commercial* act performed by the Republic in the United States.  His only potentially relevant testimony is that the Republic, upon learning in Florida that Plaintiff's passport was going to expire, provided him with a Letter from the "Ministry of Culture" which

was purportedly meant to "enable him to expedite procurement of his [expired U.S. passport]." D.E. 140 at 7–8; *see also* D.E. 264 at 3–4. But the Letter makes no mention of the Collection or negotiations with the Republic. In fact, the Letter indicates an entirely different purpose for the trip: to make "a documentary on the life of Don Joaquin de Mier." *See* D.E. 106 at 5; D.E. 106-2. Plaintiff's self-serving testimony that the Letter somehow aided a *U.S.* citizen in obtaining a *U.S.* passport is not credible and is contradicted by his prior assertion in the FAC that he received the Letter *before* the purported officials arrived in Florida and learned of Plaintiff's passport expiration. *See* D.E. 106 at 4–6.

But even if Plaintiff did prove that the Letter aided him in expediting his passport (and he did not), the Letter is a far cry from the gravamen of Plaintiff's suit — the formation and breach of a bailment in Venezuela. *See supra* §§ I.A.2, I.B.1. Providing the Letter is a peripheral act, at best.

### D.  Plaintiff failed to prove that the third clause of the commercial activity exception applied.

To establish an exception to the Republic's immunity under the third clause of the commercial activity exception, Plaintiff was required to prove that the Republic's activity elsewhere caused a "direct effect in the United States." *See* 28 U.S.C. § 1605(a)(2). To establish a direct effect in a breach of contract case, a plaintiff must prove that the United States is the exclusive place of performance of the contract. *See Samco Glob. Arms, Inc. v. Arita*, 395 F.3d 1212, 1217 (11th Cir.

2005); *see also Odhiambo*, 764 F.3d at 38–39; *Araya-Solorzano v. Gov't of Republic of Nicaragua,* 562 F. App'x 901, 904 (11th Cir. 2014) (holding no direct effect where sovereign could perform outside the United States); *see also Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela,* 784 F.3d 804, 818 (D.C. Cir. 2015) (same), *rev'd on other grounds by* 581 U.S. 170 (2017).

Although this Court determined that Plaintiff's *allegations* were sufficient to conclude that the place of performance of the bailment was the United States, Plaintiff's evidence demonstrates that the place of performance was, if anywhere, Venezuela. *See Devengoechea*, 889 F.3d at 1225–26. For years, Plaintiff testified consistently that he delivered the Collection to the Republic in Venezuela, and failed to assert that the Republic was required to return the Collection in Florida. *See, e.g.*, D.E. 21-3, 135. Only *eleven years later* did Plaintiff first claim the purported agreement entailed the Republic returning the Collection in Florida. D.E. 264. But the record evidence demonstrates that the Republic did not breach the bailment, and instead discharged any purported obligation to Plaintiff by returning the Collection to Plaintiff's agent in Venezuela, Mr. Mier. D.E. 200-1 at 66–67. Rather than examine that evidence, the District Court improperly credited Plaintiff's belated testimony and erroneously applied Florida law to determine the place of performance of the bailment was Florida. D.E. 293 at 10–11.

**1. Plaintiff failed to prove the Republic breached the bailment such that its actions could constitute a "direct effect in the United States."**

The District Court's exercise of jurisdiction under the third clause of the commercial activity exception rests on the erroneous finding that the Republic breached the bailment. *Id.* But the record demonstrates the Collection *was returned to Plaintiff* via his agent, Mr. Mier. Pursuant to the contract between Plaintiff and Mier, Plaintiff designated Mier to act as his agent in Venezuela to further Plaintiff's interest in recovering the Collection. D.E. 222-4. Plaintiff's documents show that Mier repeatedly demanded the Republic deliver the Collection to him in Venezuela, and that Plaintiff was aware of — and did not object to — Mier's efforts to recover the Collection. D.E. 200-1 at 49, 58, 66–67, 70; D.E. 222-14 at 3. In October 2012, Plaintiff's documents show that Mier informed Plaintiff that the Republic returned the Collection to him in Venezuela and instructed Plaintiff to travel to Venezuela to pick it up, but Plaintiff never did so. D.E. 200-1 at 66–67. The Court should not credit Plaintiff's belated attempt at summary judgment and the default hearing to inject yet another requirement into the alleged agreement to return the Collection to him in *Florida*. *See* D.E. 264; D.E. 310 at 32:8–13.

**2. Plaintiff failed to prove the United States as the place of performance of the purported bailment.**

The District Court's determination that the United States was the place of performance of the bailment erred by holding that the Republic had two alternative

obligations under Florida law: (1) to return the Collection to Plaintiff in the United States; or (2) to purchase the Collection from Plaintiff in the United States.  D.E. 293 at 10–11.  The Republic, however, was not required to do either based on Plaintiff's own evidence.

As noted above, the District Court erroneously applied Florida law to Plaintiff's claim, and instead was required to apply Venezuelan law.  *See supra* § I.A.2.  But even if Florida law applied, Plaintiff still failed to prove by compelling, admissible evidence that the United States was the exclusive place of performance.  *First*, the Republic was not required to return the Collection to Plaintiff in the United States because a bailee's obligation to return the property ordinarily entails "only a duty to tender possession of the item at the *premises of the bailee*."  *See In re Janmar, Inc.*, 4 B.R. 4, 11 (Bankr. N.D. Ga. 1979) (emphasis added); *see also Samco*, 395 F.3d at 1217–18 (holding Honduras' only obligation as bailee was to release property to the bailor in Honduras).  If the bailee has an affirmative duty to return the property but the agreement is silent as to the place of redelivery, "the bailee has the implied duty to return the bailment to the bailor *at the place the property was received*."  *Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 617 (5th Cir. 1989) (emphasis added).  Here, the place where the property was received was Venezuela.  *See supra* § I.A.2.

Plaintiff's only evidence that the Republic was required to return the

Collection in Florida is, again, his own belated, self-serving testimony (D.E. 264),
contradicted by years of Plaintiff failing to assert that obligation existed. Moreover,
Plaintiff explicitly testified earlier in this action that he would never have agreed to
have the Republic ship the Collection to him in the United States. D.E. 222-1 at
177:19–25. That is consistent with the uncontroverted evidence demonstrating that
Plaintiff had an obligation to reclaim the Collection in Venezuela. *See* D.E. 200-1
at 45, 66–67, 70. In particular, Plaintiff's agent, Mr. Mier, stated explicitly that
Plaintiff would need to travel to Venezuela to reclaim the Collection. *See id.* at 66–
67, 70 ("I'm telling you to come and get all of your things, because don't expect that
I also have to bring them to you, after you fail to recognize the 20% we originally
agreed upon for the negotiation."). Mr. Mier consistently informed Plaintiff that the
return of the Collection would be accomplished through the delivery of the
Collection to Mier in Venezuela, and Plaintiff did not object. *Id.* at 45; *see also id.*
at 66–67. In short, the record is clear that, to the extent a bailment agreement was
formed with Plaintiff at all, performance was to be completed *in Venezuela*, not the
United States. Thus, the Republic's purported failure to return the Collection cannot
constitute a direct effect in the United States. *See Helmerich*, 78 F.3d at 818 (holding
foreign state's discretion to perform contract outside of United States did not
constitute a "direct effect").

    *Second*, contrary to the District Court's conclusion, the Republic did not have

an obligation to pay for the Collection in Florida.  *See* D.E. 293 at 11.  Notably, the District Court found the Republic breached that obligation based on the general principle under Florida law that payments are due where the creditor is located.  *Id.* (citing *Treasure Coast Tractor Serv., Inc. v. JAC Gen. Constr., Inc.*, 8 So.3d 461, 462 (Fla. Dist. Ct. App. 2009).  Setting the inapplicability of Florida law, this general principle applies only where there is "an express promise to pay."  *James A. Knowles, Inc. v. Imperial Lumber Co.*, 238 So.2d 487, 489 (Fla. Dist. Ct. App. 1970).  Plaintiff consistently testified, however, that he never negotiated or agreed to a purchase price with the Republic.  D.E. 264 at 6; D.E. 135 at 6.  As such, the Republic made no "express promise to pay" because it "ha[d] no obligation to purchase" the Collection from Plaintiff at all.  *Samco*, 395 F.3d at 1217.  Thus, the general presumption that the creditor is to be paid where he is located does not apply here and the Republic had no obligation — express or otherwise — to pay Plaintiff in the United States.  Any alleged breach of the Republic's purported payment obligation thus also cannot constitute a direct effect in the United States.  *See Araya-Solorzano*, 562 F. App'x at 905 ("That payments could have been made in multiple places makes the direct effects here more speculative") (quotations omitted); *Helmerich*, 784 F.3d at 818 (holding no direct effect because "contracts gave [plaintiffs] no power to demand payment in the United States").

## III. THE DISTRICT COURT LACKED PERSONAL JURISDICTION OVER THE REPUBLIC

Under the FSIA, personal jurisdiction exists over a foreign state where (1) service has been properly effected pursuant to § 1608 and (2) an exception to sovereign immunity has been established under §§ 1605–1607. *See* 28 U.S.C. § 1330(b); *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1053–54 (2019); *see also S & Davis Int'l v. Republic of Yemen*, 218 F.3d 1292, 1303 (11th Cir. 2000). As noted, Plaintiff failed to prove an exception to the Republic's immunity such that subject-matter jurisdiction exists over this action. The District Court therefore lacked personal jurisdiction over the Republic and the judgment is void and must be vacated. *See Oldfield v. Pueblo de Bahia Lora, S.A.*, 558 F.3d 1210, 1224 (11th Cir. 2009) (vacating default judgment and remanding with instructions to dismiss for lack of personal jurisdiction).

## IV. THE DISTRICT COURT ERRED IN ASSESSING PLAINTIFF'S DAMAGES

This Court reviews the determination of damages for abuse of discretion. *Regions Bank*, 597 F. App'x at 1014. Questions of law bearing on the interpretation of damages are reviewed *de novo*. *Golden Door*, 117 F.3d at 1339.

Although a defaulting defendant ordinarily forfeits its right to raise nonjurisdictional objections, *see Prac. Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1547 (D.C. Cir. 1987), this Court may exercise its discretion to hear

nonjurisdictional questions in "exceptional circumstances." *Owens v. Republic of Sudan*, 864 F.3d 751, 814 (D.C. Cir. 2017), *vacated on other grounds by Opati v. Republic of Sudan*, 590 U.S. 418 (2020), (citing *Acree v. Republic of Iraq*, 370 F.3d 41, 58 (D.C. Cir. 2004)).  The Court properly exercises such discretion "for questions that bear upon sensitive matters of international relations," including the award of large sums against a foreign government in default.  *Id.*; *see also Acree*, 370 F.3d at 58 (finding exceptional circumstances from a "nearly-billion dollar default judgment against a foreign government").  Additionally, appellate courts may exercise their discretion to hear "pure question[s] of law that do[] not depend on any additional facts not considered by the district court."  *Owens*, 864 F.3d at 811 (cleaned up).

Here, this Court should hear the Republic's damages challenges because (1) the size of the award against the Republic is significant; (2) the Executive Branch has a demonstrated interest in preserving the Republic's assets for the Venezuelan people; and (3) at least one argument concerns a pure question of law.  The District Court awarded over $17 million to Plaintiff, including prejudgment interest which nearly doubled the amount of Plaintiff's compensatory damages.  *See* D.E. 293.  This amount is especially significant where the Executive Branch has consistently expressed its commitment to preserve the assets of the Republic for the benefit of the Venezuelan people.  Since the Maduro regime unlawfully seized the presidency of Venezuela and the Republic's state-owned assets in 2019, OFAC has maintained

50

blocking measures which are intended to "ensure that the assets of Venezuela are preserved for the country's people, rather than misused and diverted by former President Nicolas Maduro."  OFAC, Frequently Asked Question No. 660, U.S. DEP'T OF THE TREASURY, https://home.treasury.gov/policy-issues/financial-sanctions/faqs/660.  The United States remains committed to those same principles today. *See id.*  Awarding damages here, where the District Court has failed to adhere to the appropriate laws and procedures for assessing Plaintiff's claim, would seriously undermine this foreign-policy objective.

Additionally, the District Court's failure to apply the appropriate laws when assessing Plaintiff's damages is a pure question of law that is appropriate for appellate resolution.

Here, the District Court's missteps were two-fold.  *First*, the District Court committed reversible error by applying Florida law to Plaintiff's damages claim.  D.E. 293 at 11; *see id.* at 12 (assessing prejudgment interest pursuant to Florida's statutory rate).  The FSIA, however, addresses the standard for assessing damages against a foreign sovereign.  Namely, § 1606 of the FSIA provides "[a]s to any claim for relief with respect to which a foreign state is not entitled to immunity . . . the foreign state shall be liable in the same manner and to the same extent as a private individual in like circumstances."  28 U.S.C § 1606.

The Supreme Court held recently that § 1606 compels the courts to determine

51

the law applicable to the sovereign by looking at the substantive law of the forum, including the forum's choice-of-law rules. *See Cassirer*, 596 U.S. at 114–15. Thus, to determine the extent of the Republic's liability, the District Court was required to turn first to Florida's choice-of-law rules, which, as noted above, apply *lex loci contractus*. *See supra* § I.A.2. Because the bailment was formed (if at all) in Venezuela (*see id.*), the District Court was required to apply Venezuelan law to assess Plaintiff's damages. *Cassirer*, 596 U.S. at 114–16 (applying California's choice-of-law rule to assess whether Spain or California law applied to defendant's liability); *see also Arleth v. Freeport-McMoran Oil & Gas Co.*, 2 F.3d 630, 636 (5th Cir. 1993) (holding prejudgment interest a matter of substantive law and applying Delaware law to assess prejudgment interest). By failing to assess Plaintiff's damages under § 1606 and Supreme Court precedent and instead applying Florida law without question, the District Court committed reversible error.

*Second*, the District Court abused its discretion when it prompted Plaintiff's damages expert to increase his valuation at "trial." D.E. 310 at 42:1–45:16. "It is axiomatic that the trial judge has a duty to conduct the trial carefully, patiently, and impartially." *Hanson v. Waller*, 888 F.2d 806, 813 (11th Cir. 1989) (cleaned up) (quoting *Moore v. United States*, 598 F.2d 439, 442 (5th Cir. 1979)). A trial judge "may comment on the evidence, may question witnesses and elicit facts not yet adduced or clarify those presented, and may maintain the pace of the trial." *Id.* But

when a district court "strays from neutrality" and "abandons [its] proper role and assumes that of an advocate," it abuses its discretion. *Id.* at 812–13 (cleaned up); *see also* Fed. R. Evid. 614, Advisory Committee Note. More specifically, a court abuses its discretion when it commands an expert's questioning and suggests an expert should testify in a certain manner. *Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 580 (5th Cir. 2001). For example, in *Rodriguez*, the district court "took control of the questioning [of the defense's expert] and suggested that the defense witness should agree with him." *Id.* On appeal, the Fifth Circuit cautioned that the district court's comments could rise to the level of impartiality addressed by *Moore*. *Id.* at 580–81.

Here, as in *Rodriguez*, Plaintiff's expert was prompted to testify in a manner that would increase his valuation of the Collection. *See* D.E. 310 at 44:15–20 (THE COURT: [T]his Christie's collection caught my eye . . . and that would suggest to me that the overall value of [Plaintiff's] collection may be more than $8.8 million."). The District Court opined that "plaintiff's collection is at least, if not more, valuable than what the 1988 [Christie's collection] would be valuable today to the Venezuelan government." *Id.* at 44:25–45:2. The District Court asked if the valuation was "a conservative number," and to provide a valuation that was not conservative. *Id.* at 45:4–8. The expert then increased his valuation to between $10 and $15 million. *Id.* at 45:9–15. This shift is especially stark given that the District Court valued the

53

Collection at $6,666,808 in 2014 (*see* D.E. 24), which amounts to $8,626,141 at the time of judgment, nearly $1 million less than the value assessed in the judgment.

This line of questioning went beyond the role of neutral mediator and resulted in damages beyond the expert's original valuation. Accordingly, the damages award should be reversed for abuse of discretion.

## <u>CONCLUSION</u>

For all these reasons, the Court should vacate the Findings of Fact and Conclusions of Law (D.E. 293) and Final Judgment (D.E. 295), and remand with instructions that the District Court dismiss the action with prejudice. As such, the Court should likewise vacate the orders allowing Plaintiff to execute upon the judgment. *See* D.E. 294, D.E. 299.

Dated:  May 10, 2024

Respectfully submitted,

By: /s/ *Claire A. DeLelle*
Claire A. DeLelle
Blair E. Trahan
White & Case LLP
701 Thirteenth Street, N.W.
Washington, D.C., 20005
claire.delelle@whitecase.com
blair.trahan@whitecase.com
(202) 626-3600

Jaime A. Bianchi
Dylan Fay
White & Case LLP
200 S Biscayne Blvd.
Miami, FL 33131
jbianchi@whitecase.com
dylan.fay@whitecase.com
(305) 371-2700


*Counsel for the Bolivarian Republic of Venezuela*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-face and volume limitations of Federal Rules of Appellate Procedure 32(a)(5)–(7) and this Court's local rules because it contains 12,686 words, excluding parts of the brief exempted by Rule 32(f) and this Court's local rules, and has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

<u>/s/ *Claire A. DeLelle*</u>
Claire A. DeLelle

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 10th day of May 2024, the foregoing was electronically filed through this Court's CM/ECF system and a copy was electronically served through the CM/ECF system on all registered counsel of record.

I further certify that, on May 10, 2024, four copies of the foregoing document were dispatched via third-party commercial carrier to the following:

Clerk of Court
U.S. Court of Appeals for the 11th Circuit
56 Forsyth St. N.W.
Atlanta, Georgia 30303


/s/ *Claire A. DeLelle*
Claire A. DeLelle