No. 24-10029

# United States Court of Appeals

*for the*

# Eleventh Circuit

---

RICARDO DEVENGOECHEA,

*Plaintiff-Appellee,*

– v. –

BOLIVARIAN REPUBLIC OF VENEZUELA, a foreign state,

*Defendant-Appellant.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA IN CASE NO. 1:12-CV-23743-PCH
(PAUL C. HUCK, SENIOR U.S. DISTRICT COURT JUDGE)

## REPLY BRIEF OF DEFENDANT-APPELLANT THE BOLIVARIAN REPUBLIC OF VENEZUELA

CLAIRE A. DELELLE
BLAIR E. TRAHAN
WHITE & CASE, LLP
701 Thirteenth Street NW
Washington, DC 20005
(202) 626-3600

JAIME BIANCHI
DYLAN FAY
WHITE & CASE, LLP
200 South Biscayne Boulevard,
   Suite 4900
Miami, Florida 33131
(305) 371-2700

*Counsel for the Bolivarian Republic of Venezuela*

*Devengoechea v. Bolivarian Republic of Venezuela*        Case No. 24-10029-J

## AMENDED CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1, Appellant Bolivarian Republic of Venezuela (the "Republic" or "Defendant") certifies the following individuals and parties may have an interest in the outcome of this appeal.

1. Bank of America N.A. (Garnishee)

2. Becerra, the Honorable Jacqueline (United States Magistrate Judge)

3. Bianchi, Jaime (Counsel for Appellant)

4. Bilzin Sumberg Baena Price & Axelrod (Former Counsel for Appellant)

5. Blasi, Fernando (Member of CAPA)

6. Cordano, Miguel (Counsel for Garnishee)

7. Council for the Administration and Protection of Assets of the Republic of Venezuela (Consejo de Administración y Protección de Activos de la República de Venezuela) ("CAPA")

8. Curtis Mallet-Prevost Colt & Mose, LLP (Former Counsel for Appellant)

9.  DeLelle, Claire (Counsel for Appellant)

10. Devengoechea, Ricardo (Appellee)

11. Fay, Dylan (Counsel for Appellant)

12. Ferri, Marco (Former Counsel for Appellee)

*Devengoechea v. Bolivarian Republic of Venezuela*       Case No. 24-10029-J

13. Freyre, Arthur (Former Counsel for Appellee)

14. Garcia, Robert (Former Counsel for Appellant)

15. Grossman, Dennis (Counsel for Appellee)

16. Goicoechea, Yon (Member of CAPA)

17. Huck, the Honorable Paul C. (United States District Court Judge)

18. Krauland, Edward (Former Counsel for Appellee)

19. Lustrin, Lori (Former Counsel for Appellant)

20. Marcano, Gustavo (Coordinator of CAPA)

21. Meehan, Kevin (Former Counsel for Appellant)

22. Millan, Carlos (Member of CAPA)

23. Mora, Martha Rose (Former Counsel for Appellee)

24. Pizzurro, Joseph (Former Counsel for Appellant)

25. Poblete Tamargo LLP (Former Counsel for Appellee)

26. Price, Max (Counsel for Appellee)

27. Steptoe & Johnson LLP (Former Counsel for Appellee)

28. Trahan, Blair (Counsel for Appellant)

29. Uzcategui, Rene (Member of CAPA)

*Devengoechea v. Bolivarian Republic of Venezuela*          Case No. 24-10029-J

30. White & Case LLP (Counsel for Appellant)

31. Widom, Mitchell (Former Counsel for Appellant)

Appellant the Bolivarian Republic of Venezuela submits that it is a foreign state, and thus is not a subsidiary or affiliate of a publicly-held corporation.  No publicly traded company has a financial interest in the outcome of this case or appeal.

/s/ *Claire A. DeLelle*
Claire A. DeLelle

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ...............................................................C-1

TABLE OF CITATIONS ......................................................... ii

INTRODUCTION ...................................................................1

ARGUMENT .........................................................................5

I.    The District Court Lacked Subject-Matter Jurisdiction ...................................5

    A.    Plaintiff failed to discharge his evidentiary burden under § 1608(e) to establish an exception to the Republic's immunity. ........................ 5

    B.    Plaintiff failed to prove this action is "based upon" a commercial act of the Republic............................................................... 10

    C.    Plaintiff failed to prove that the first clause of the commercial activity exception applied.................................................. 16

    D.    Plaintiff failed to prove that the second clause of the commercial activity exception applied.................................................. 19

    E.    Plaintiff failed to prove that the third clause of the commercial activity exception applied.................................................. 20

II.   The District Court Lacked Personal Jurisdiction Over The Republic...........24

III.  The District Court Erred In Assessing Plaintiff's Damages.........................25

CONCLUSION ....................................................................28

CERTIFICATE OF COMPLIANCE........................................29

CERTIFICATE OF SERVICE ...............................................30

i

## TABLE OF CITATIONS

**Page(s)**

### CASES

*Agudas Chasidei Chabad of United States v. Russian Federation*,
　110 F.4th 242 (D.C. Cir. 2024)................................................................2

*Aquamar S.A. v. Del Monte Fresh Produce N.A.*,
　179 F.3d 1279 (11th Cir. 1999) ........................................................8, 12

*Berizzi Brothers Co. v. The Pesaro*,
　271 U.S. 562 (1926)................................................................................9

*\*Bolivarian Republic of Venezuela v. Helmerich & Payne International Drilling
　Co.*, 581 U.S. 170 (2017) ...........................................................5, 6, 21

*Broward Bulldog, Inc. v. United States Department of Justice*,
　939 F.3d 1164 (11th Cir. 2019) .........................................................22

*Butler v. Sukhoi Co.*,
　579 F.3d 1307 (11th Cir. 2009) ...........................................................5

*\*Cassirer v. Thyssen-Bornemisza Collection Foundation*,
　596 U.S. 107 (2022)..............................................................................26

*Compania Espanola de Navegacion Maritima v. The Navemar*,
　303 U.S. 68 (1938)..................................................................................9

*\*Compania Interamericana Export-Import, S.A. v. Compania Dominicana de
　Aviacion*, 88 F.3d 948 (11th Cir. 1996) .........................................7, 10

*Devengoechea v. Bolivarian Republic of Venezuela*,
　889 F.3d 1213 (11th Cir. 2018) ..................................................*passim*

*Domino's Pizza LLC v. Deak*,
　383 F. App'x 155 (3d Cir. 2010) ......................................................16

*Fioretti v. Massachussetts General Life Insurance Co.*,
　53 F.3d 1228 (11th Cir. 1995) ...........................................................15

*GDG Acquisitions LLC v. Government of Belize,
   849 F.3d 1299 (11th Cir. 2017) ....................................................12, 13

Gerritsen v. Escobar y Cordova,
   688 F. Supp. 556 (C.D. Cal. 1988) ................................................8, 9

Hanson v. Waller,
   888 F.2d 806 (11th Cir. 1989) ...........................................................27

Herederos De Roberto Gomez Cabrera, LLC v. Teck Resources Ltd.,
   43 F.4th 1303 (11th Cir. 2022) ..........................................................25

Jackson v. State,
   18 So.3d 1016 (Fla. 2009) ..................................................................16

*Jam v. International Finance Corp.,
   3 F.4th 405 (D.C. Cir. 2021)..............................................................17

James A. Knowles, Inc. v. Imperial Lumber Co.,
   238 So.2d 487 (Fla. Dist. Ct. App. 1970)..........................................24

Jones v. Bank of America, N.A.,
   564 F. App'x 432 (11th Cir. 2014) ...............................................17, 20

Kensington International, Ltd. v. Itoua,
   505 F.3d 147 (2d Cir. 2007) .........................................................19, 20

*Kim v. Democratic People's Republic of Korea,
   774 F.3d 1044 (D.C. Cir. 2014)....................................................5, 7, 8

Lehigh Valley R. Co. v. State of Russia,
   21 F.2d 396 (2d Cir. 1927) ............................................................8, 9

Lujan v. Defenders of Wildlife,
   504 U.S. 555 (1992)............................................................................11

Owens v. Republic of Sudan,
   864 F.3d 751 (D.C. Cir. 2017)............................................................26

Practical Concepts, Inc. v. Republic of Bolivia,
   811 F.2d 1543 (D.C. Cir. 1987) .........................................................10

*Rosner v. United States*,
  231 F. Supp. 2d 1202 (S.D. Fla. 2002) ...............................................................14

*S & Davis International, Inc. v. Republic of Yemen*,
  218 F.3d 1292 (11th Cir. 2000) ..........................................................................25

*Schoeps v. Freistaat Bayern*,
  611 F. App'x 32 (2d Cir. 2015) ...........................................................................19

*Velasquez v. General Consulate of Mexico*,
  1993 WL 69493 (N.D. Cal. Mar. 4, 1993) ........................................................8, 9

*\*Wye Oak Technology, Inc. v. Republic of Iraq*,
  109 F.4th 509 (D.C. Cir. 2024)......................................................................23, 24

*Wylie v. Red Bull North America, Inc.*,
  627 F. App'x 755 (11th Cir. 2015) .......................................................................5

## STATUTES AND RULES

28 U.S.C. § 1605 ........................................................................................2, 17, 25

28 U.S.C. § 1606 ...................................................................................................26

28 U.S.C. § 1608 ............................................................................................*passim*

## **INTRODUCTION**

The Opposition does not dispute that Plaintiff participated in a one-sided trial at which Defendant the Republic of Venezuela did not appear.  By holding that the Republic was appearing at trial pro se, the District Court contravened centuries of black-letter law holding that artificial entities — including foreign sovereigns — must appear in U.S. courts through counsel.

The Opposition's accusations that the Republic strategically boycotted trial and misrepresented the procedural history are not true.  While the Opposition professes confusion regarding the relevance of Venezuela's political crisis, those unassailable facts demonstrate the very reason the Republic lacked counsel and therefore did not appear at trial.  On the one hand, the government that previously instructed former counsel was derecognized as the official government by the United States.  This meant that former counsel could no longer represent the Republic as it was directed by representatives of the Maduro regime, the former, derecognized government, in the action below.  On the other hand, the newly recognized government, under whose authority undersigned counsel appear, was embroiled in unique challenges associated with governing in exile.  These challenges included directing constrained resources to defending other ongoing actions in the United States, including actions that pose an existential threat to its sovereign ownership of CITGO Petroleum Corporation located in Texas.  There was nothing "tactical" about

the Republic's absence.

In the Republic's absence, the District Court failed to adhere to the requirements under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1608(e), which heightened Plaintiff's evidentiary burden to obtain a default judgment against the Republic. In turn, this failure led to the incorrect determination, on a fundamentally threadbare and insufficient evidentiary record, that the District Court had subject-matter jurisdiction under all three clauses of the FSIA's commercial activity exception, 28 U.S.C. § 1605(a)(2).

The Opposition repeatedly asserts without any support that the Republic may not contest Plaintiff's meager evidentiary showing because the Republic's arguments relate to the merits of his claim, not the District Court's jurisdiction. But this argument wholly ignores that the District Court's jurisdictional findings were closely intertwined with the merits of Plaintiff's case. And "[s]ettling a jurisdictional question correctly—rather than simply settling it—is . . . particularly important when the question concerns foreign sovereign immunity." *Agudas Chasidei Chabad of United States v. Russian Fed'n*, 110 F.4th 242, 254 (D.C. Cir. 2024).

The Opposition's other aspersions against the Republic are equally unfounded. For example, the Republic noted that Plaintiff's First Amended Complaint alleged a new jurisdictional basis under the commercial activity

exception resulting from "extensive commercial negotiations" in the United States. Br. 8. Plaintiff claims this is a "misrepresent[ation]" because he alleged the commercial activity exception in his Original Complaint. Opp. 12. But the Original Complaint contains no such allegations concerning "extensive commercial negotiations" in the United States. *See* D.E. 1. Similarly, Plaintiff faults the Republic for failing to mention he supposedly amended his Original Complaint "as a matter of right." Opp. 13. Plaintiff omits, however, that he failed to amend his Original Complaint within the timeframe required following the Republic's motion to dismiss, or otherwise request an extension. *See* Fed. R. Civ. P. 15(a)(1)(B).

Plaintiff's contention that the Republic "misstate[s]" the parties' settlement agreement and the need for an OFAC license similarly is incorrect. Opp. 19. In particular, no record evidence supports Plaintiff's contention that the Republic refused to pay the settlement agreement "obviously to delay the action below by forcing Plaintiff to undertake" getting an OFAC license. *Id.* Plaintiff further does not point to any record evidence supporting his contention that "counsel kept open the possibility of settlement payment" after the agreement expired in 30 days. Opp. 20. Nor does Plaintiff's contention — for the first time — that Delcy Rodriguez negotiated or was otherwise involved in the settlement agreement find any support in the record. *See id.* While Plaintiff tellingly failed to provide the District Court with a complete, signed copy of the settlement agreement (*see* D.E. 229-6), that

3

agreement was not signed by Delcy Rodriguez or any other individual sanctioned at the time.  Finally, to the extent the United States had imposed any sanctions on transactions with the Republic (which is the relevant contractual party) at the time, those sanctions were not applicable.  *See* Exec. Order No. 13808, 82 Fed. Reg. 116 (Aug. 24, 2017) (prohibiting "new debt with a maturity of *greater than 30 days*, or new equity, of the Government of Venezuela") (emphasis added).[1]

Plaintiff's reliance on the Third Circuit's characterization of the facts of this case (at 1) — which relied exclusively on this Court's recounting of Plaintiff's allegations "in the light most favorable to [him]" — cannot overcome his jurisdictional burden.  *See Devengoechea v. Bolivarian Republic of Venezuela*, 2024 WL 3342424, at *1 n.1 (3d Cir. July 9, 2024) (citing *Devengoechea v. Bolivarian Republic of Venezuela*, 889 F.3d 1213, 1225–26 (2018)).  All told, the numerous inconsistencies identified in Plaintiff's case, coupled with Plaintiff's threadbare evidentiary record, demonstrate that Plaintiff failed to prove the District Court's subject-matter jurisdiction by credible, admissible evidence.  This Court should vacate the District Court's decision and remand with instructions to dismiss the action with prejudice.

---

[1] The Opposition's other quibbles are belied by the record.  For example, contrary to Plaintiff's assertion, Plaintiff did in fact testify at "trial" that he was in Venezuela both for "three weeks" and for "30 days."  *Compare* D.E. 310 at 22:22–23 ("I was in Venezuela for approximately three weeks."), *with* D.E. 310 at 22:25–23:1 ("[S]o that's pretty much what was going on for the 30 days I was there.").

## ARGUMENT

## I.    THE    DISTRICT    COURT    LACKED    SUBJECT-MATTER JURISDICTION

### A.    Plaintiff failed to discharge his evidentiary burden under § 1608(e) to establish an exception to the Republic's immunity.

Plaintiff cannot overcome the settled rule that, "in order to establish subject matter jurisdiction under the FSIA," he "must overcome the presumption that the foreign state is immune from suit by producing evidence that the conduct which forms the basis of [the] complaint falls within one of the" FSIA's immunity exceptions. *Butler v. Sukhoi Co.*, 579 F.3d 1307, 1312–13 (11th Cir. 2009) (cleaned up); *see also Wylie v. Red Bull N. Am., Inc.*, 627 F. App'x 755, 757 (11th Cir. 2015) (recognizing the "long-standing rule" that "the party invoking federal court jurisdiction" has the burden of proof).  That rule has particular force in actions such as this in light of the sensitivities and possible foreign policy implications of entering a default judgment against a foreign sovereign.  *See* 28 U.S.C. § 1608(e); *see also Kim v. Democratic People's Republic of Korea*, 774 F.3d 1044, 1049, 1050–51 (D.C. Cir. 2014).  Recognizing these heightened concerns, § 1608(e) of the FSIA requires Plaintiff establish subject-matter jurisdiction (*i.e.*, an exception to the Republic's sovereign immunity) by "evidence satisfactory to the court."  28 U.S.C. § 1608(e); *see also Kim*, 774 F.3d at 1047, 1049, 1050–51.

Plaintiff misreads the Supreme Court's opinion in *Bolivarian Republic of*

*Venezuela v. Helmerich & Payne International Drilling Co.*, 581 U.S. 170 (2017), as providing support for his failure to carry his burden of proving an exception to the Republic's foreign sovereign immunity. *See* Opp. 36. Plaintiff contends that *Helmerich* "distinguished between FSIA jurisdiction and the merits of a claim," and thus, he need not prove a "valid claim" to prove subject-matter jurisdiction. *Id.*

To the contrary, *Helmerich* holds that — consistent with the common law rule and statutory requirement of § 1608(e) — courts must "answer the jurisdictional question," even when "merits and jurisdiction . . . come intertwined."[2] 581 U.S. at 178. Such is the case here, as reflected in the District Court's jurisdictional findings, which turn on the validity of Plaintiff's claims. *See* D.E. 293 at 9–11. The District Court's erroneous conclusion that Plaintiff had established an exception under each clause of the commercial activity exception was bound up in its determination that Plaintiff had proven, among other things, the existence and breach of a bailment between Plaintiff and the Republic, *i.e.*, that he had proved his claim on the merits. *See id.* As a result, Plaintiff's failure to provide sufficient evidence to support the merits of his claim under § 1608(e) compels the conclusion that Plaintiff also failed

---

[2] The Supreme Court is poised to determine the precise contours of the pleading requirements set forth in *Helmerich*, *i.e.*, whether a plaintiff "must make out a valid claim that an exception applies at the pleading stage, rather than merely raising a plausible inference." *See* Br. for Petitioner, *Republic of Hungary v. Simon*, No. 23-867. Though any decision by the Supreme Court will likely concern a plaintiff's burden at the pleading stage, it is conceivable that the Court's ultimate decision could inform the burden issues presented in this appeal.

to carry his burden of establishing subject-matter jurisdiction. *See Kim*, 774 F.3d at 1049, 1050–51.

Plaintiff contends that the District Court's failure to adhere to the FSIA's mandatory evidentiary standard for default judgments under § 1608(e) is not erroneous because the District Court's decision to hold a one-sided "trial" in the Republic's absence was not a default proceeding. *See* Opp. 39–40. Plaintiff's contention is unavailing.

As a threshold matter, Plaintiff first attempts to analogize the evidentiary standard applicable to FSIA default judgments to "a normal case without a default." Opp. 39. Plaintiff's position again ignores that the Republic was not at "trial," and thus Plaintiff's evidence was not subject to the adversarial process as it would have been in a "normal case." In this posture, this Circuit counseled in *Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996), as Plaintiff acknowledges (at 39), that § 1608(e) requires a plaintiff prove his claim by "evidence satisfactory to the court." Plaintiff omits, however, that the *Compania* panel expressly distinguished the evidentiary standard for default judgments in FSIA cases from "normal cases": "[A] default judgment governed by § 1608(e) must be treated differently than an ordinary default judgment." 88 F.3d at 951.

Plaintiff offers only conclusory statements that he "clearly submitted

7

satisfactory evidence" and "bore all evidentiary burdens" during the supposed "trial." Opp. 39. Yet Plaintiff fails to engage with the multiple examples the Republic cited in its Opening Brief (at 30–31) demonstrating that the District Court neglected its obligation under § 1608(e) to satisfy itself that Plaintiff submitted "compelling, admissible evidence" establishing subject-matter jurisdiction. *Kim*, 774 F.3d at 1049, 1050–51.

Instead, Plaintiff contends the one-sided "trial" was not a default proceeding subject to § 1608(e)'s heightened evidentiary standard because the Republic had "appeared through counsel, then discharged its counsel, and was appearing pro se." Opp. 39–40. As the Republic explained, a pro se appearance by a foreign sovereign is a legal impossibility. Br. 30 (collecting cases). Plaintiff's suggestions to the contrary are unsupported. *See* Opp. 40 (citing *Aquamar S.A. v. Del Monte Fresh Produce N.A.*, 179 F.3d 1279, 1297 (11th Cir. 1999); *Gerritsen v. Escobar y Cordova*, 688 F. Supp. 556, 559 (C.D. Cal. 1988); *Velasquez v. Gen. Consulate of Mexico*, 1993 WL 69493, at *3 (N.D. Cal. Mar. 4, 1993)). Specifically, the language Plaintiff relies on in *Aquamar* is a direct quote from the Second Circuit's decision in *Lehigh Valley R. Co. v. State of Russia*, 21 F.2d 396, 400 (2d Cir. 1927). But neither case addressed whether a foreign state may represent itself. *See Aquamar*, 179 F.3d at 1297 (addressing whether ambassador can waive sovereign immunity on behalf of foreign state); *Lehigh*, 21 F.2d at 400 (addressing whether ambassador of former

government had authority to maintain suit following change of power). And in *Lehigh*, the ambassador maintaining the suit notably *was represented by licensed U.S. counsel*. 21 F.2d at 399.

Moreover, *Gerritsen* is readily distinguishable and, in any event, was wrongly decided. There, Mexico, fully present in the action, moved the court to reconsider its ruling that Mexico could not represent itself. 688 F. Supp. at 557, 558. The *Gerritsen* court reasoned that it "has long been the practice in the federal courts that ambassadors may represent their states in claims against them." *Id.* at 558 (citing *Compania Espanola de Navegacion Maritima v. The Navemar*, 303 U.S. 68 (1938); *Berizzi Bros. Co. v. The Pesaro*, 271 U.S. 562 (1926)). But neither case upon which *Gerritsen* relied supports this proposition. Indeed, the ambassadors who purportedly appeared in each case on behalf of their respective sovereigns *were represented by U.S. counsel*. *See The Navemar*, 1939 WL 73656, at *9 (1939) ("[T]he Ambassador authorized Jesse L. Rosenberg to act as attorney for him in the Courts of the United States."); *The Pesaro*, 13 F.2d 468, 468 (S.D.N.Y. 1926) (noting New York counsel appearing on behalf of claimant, the Italian Ambassador). And *Velasquez*, which relied exclusively on the erroneous determination in *Gerritsen*, fails for the same reason. *See* 1993 WL 69493, at *3 (citing *Gerritsen*, 688 F. Supp. at 558–59).

The Opposition's attempt to distinguish the Republic's authorities (at 41) is insufficient to overcome the long-standing principle that artificial entities —

including foreign sovereigns — must appear in U.S. courts through counsel.  Br. 30 (collecting cases).

Finally, Plaintiff states, without support, that "public policy" demands "[r]espect for the sovereign prerogatives of foreign nations," including the option of "proceed[ing] pro se under the FSIA."  Opp. 40–41.  In advancing this purported "policy" argument, Plaintiff again ignores the more fundamental point: represented or not, the Republic was not present at the default "trial" proceeding, and Plaintiff's Opposition ignores the strong public policy disfavoring default judgments against foreign states.  *See Prac. Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1551 n.19 (D.C. Cir. 1987).

Accordingly, the District Court erred when it found that the Republic was appearing pro se and then failed to adhere to § 1608(e)'s requirements for entering a default judgment against a foreign sovereign.  *See Compania*, 88 F. 3d at 951.

> **B.    Plaintiff failed to prove this action is "based upon" a commercial act of the Republic.**
>
> > **1.    Plaintiff failed to prove the Venezuelan individuals acted with the requisite authority to bind the Republic.**

The Opposition fails to meaningfully address the Republic's contention that Plaintiff must prove that the purported Venezuelan officials acted with actual, rather than apparent authority at this stage of the litigation.  *See* Opp. 44–45; Br. 33. Instead, Plaintiff asserts that it "does not make sense to apply one rule of substantive

law at the pleading stage and then a more demanding rule of substance later on." Opp. 44–45.  But it is axiomatic that a plaintiff's evidentiary burden increases at each successive stage of the litigation.  *Cf. Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.").  Requiring a plaintiff to demonstrate apparent authority at the pleading stage, and actual authority at trial or in the § 1608(e) context, is consistent with this principle and addresses the concerns expressed by this Court in *Devengoechea*.  *See* Br. 33.

But even if apparent authority were ultimately sufficient at the evidentiary stage, Plaintiff still failed to meet his burden.  The Opposition altogether ignores the Republic's authorities demonstrating that apparent authority requires a manifestation by the *principal* (the Republic), not the agent.  Br. 34 (collecting cases).  Indeed, the only evidence Plaintiff adduced at "trial" was his own self-serving testimony that the purported *agents* represented themselves as Venezuelan officials.  *See* D.E. 310 at 19:13–15, 22:14–19.  Plaintiff does not contest that this testimony is inadmissible hearsay, nor does he explain how these purported statements constitute manifestations by the Republic (they do not).  Br. 35.

Instead, Plaintiff cites *Devengoechea*, asserting that this Court already identified "the high position of Delcy Rodriguez within the Venezuelan

11

government" as connoting sufficient apparent authority.  Opp. 44.  But this Court determined only that Plaintiff's *allegations* viewed "in the light most favorable to [him], require[d] [the Court] to conclude that [Plaintiff] sufficiently alleged that the purported Venezuelan officials" acted with the requisite authority.  *Devengoechea*, 889 F.3d at 1228.

The Opposition's interpretation of *GDG Acquisitions LLC v. Government of Belize*, 849 F.3d 1299, 1307 (11th Cir. 2017) is too narrow, arguing that the decision merely distinguishes the position of budget ministers from ambassadors.  *See* Opp. 43–44.  Instead, *GDG Acquisitions* highlights Plaintiff's failure to meet his burden.  Specifically, *GDG Acquisitions* explained that unlike ambassadors, "[c]ustomary norms of international law do not as a general rule recognize" budget ministers as having "broad powers to bind the countr[y] [he or she] represent[s] or as being able to speak for his or her country."  849 F.3d at 1307.  *GDG Acquisitions* thus reinforced the *Aquamar* principle that apparent authority of a foreign official requires evidence that "customary norms of international law" recognize that position as one "being able to speak" for the sovereign.  *Id.*

But Plaintiff offered no evidence at "trial" or otherwise demonstrating Ms. Rodriguez's purported position in the Venezuelan government was one recognized by international law as "being able to speak for . . . her country."  *Id.*  The only reference at "trial" to Ms. Rodriguez's position was Plaintiff's testimony that he *did*

12

*not even know* Ms. Rodriguez's position within the Venezuelan government at the time of the alleged agreement.  D.E. 310 at 19:16–19.  And Plaintiff has never testified that Messrs. Mier or Arvelo held identifiable positions within the Venezuelan government.  Plaintiff testified the opposite, that each were employed in positions as private citizens.  *See, e.g.*, D.E. 310 at 18:11–14, 22–25 (testifying Mier was a university professor); D.E. 21-3 at 2 (noting Arvelo was a documentary film producer).

Plaintiff attempts to cure these fatal defects by suggesting that former president Hugo Chavez was "involv[ed]" in the events giving rise to Plaintiff's claim.  Opp. 45.  But there is *no evidence* supporting Plaintiff's contention that the former Venezuelan President was involved at all.  *See* D.E. 222-1 at 21:21–22 (testifying that Plaintiff never met Chavez).  Rather, Plaintiff's testimony was only that *unnamed* individuals asked him to leave his Collection at what he believed to be Chavez's home.  D.E. 310 at 30:4–8.  Notably, Plaintiff previously claimed that he went to Chavez's home with Mr. Arvelo.  *See* D.E. 222-1 at 21:8–12.  Mr. Arvelo, however, informed counsel for the Republic that he had never been to Chavez's home, with Plaintiff or otherwise.  *See* D.E. 222-9 at 2.

In short, Plaintiff put forth no credible, admissible evidence demonstrating the relevant individuals (identified or otherwise) had the requisite authority to bind the Republic.  The District Court therefore lacked jurisdiction under all three clauses of

13

the commercial activity exception.

### 2. Plaintiff failed to prove the existence of a bailment.

Plaintiff failed to submit credible, admissible evidence establishing that a bailment existed regardless of whether Florida or Venezuelan law applied. Under Florida law, a bailment forms upon delivery of sufficiently identified property to the bailee, and requires application of the law of the forum in which the bailment was formed. Br. 36–37. Here, Plaintiff has failed to sufficiently identify the property allegedly bailed, and, according to Plaintiff's own evidence, delivery of the property occurred, if at all, in Venezuela.

Notably, the Opposition fails to engage with the Republic's authorities demonstrating that a bailment cannot exist where, as here, the plaintiff cannot identify the property allegedly bailed. Br. 37 (citing *Rosner v. United States*, 231 F. Supp. 2d 1202, 1217 (S.D. Fla. 2002)). Instead, Plaintiff claims that the Republic did not object at "trial" (again, the Republic was not there), and that Mr. Reznikoff — Plaintiff's damages expert — cured this legal defect. *See* Opp. 45. Specifically, Plaintiff relies on Mr. Reznikoff's use of "sampling techniques" to assign value to the Collection absent knowledge of its full contents. *Id.* Plaintiff, however, cites no authority in which an expert's speculation about the *value* of an unknown collection suffices to *identify the items* within the collection to satisfy bailment formation requirements.

14

Plaintiff's contention that the District Court properly applied Florida law to his breach of contract claim likewise fails. *See* Opp. 34–36. The Republic previously explained that the District Court was required first to look to Florida's choice-of-law rules, which apply the principle of *lex loci contractus*. Br. 36 (citing *Fioretti v. Mass. Gen. Life Ins. Co.*, 53 F.3d 1228, 1235 (11th Cir. 1995)). The Opposition asserts, without any support, that the bailment was "made" in Florida "where the parties agreed to it." Opp. 34. But Plaintiff ignores the Republic's numerous authorities demonstrating that a bailment *cannot be formed* until delivery of the goods sought to be bailed. Br. 36 (collecting authorities). The Opposition's repeated and unsupported assertions that the bailment was "made" in Florida are insufficient in the face of Plaintiff's testimony that the Collection was delivered in *Venezuela.* Br. 37 (citing D.E. 21-3, 135, 264; D.E. 310 at 30:4–13).

The Opposition next contends that regardless of this defect, the Court should still treat Venezuelan and Florida law as one and the same. Opp. 35. In particular, Plaintiff claims the Republic failed to articulate the applicable Venezuelan law to this Court, and thus, Florida's choice-of-law rules compel application of Florida law. *Id.* (citing *Jackson v. State*, 18 So.3d 1016, 1029 (2009)). *Jackson*, however, stands for the proposition that a party must articulate the substance of the foreign law to the *lower court*. *See* 18 So.3d at 1029. Upon remand, the Republic stands ready to brief its Venezuelan law arguments before the District Court.

15

Plaintiff further contends that the Republic provided no notice of its intent to invoke Venezuelan law and "litigated this case for 8 years under Florida substantive law." Opp. 35–36. But the Republic provided sufficient notice to Plaintiff and the District Court of its intent to invoke Venezuelan law in its Answer and Affirmative Defenses. *See* D.E. 185 at 11 ("Any contract that Plaintiff entered into with an official, employee or agent of the Venezuelan government is void as a matter of *Venezuelan law*, including, *but not limited to*, being void for lack of authority and/or capacity.") (emphasis added). And while "the applicability of a choice-of-law *provision* is not a jurisdictional issue and the parties may waive their right to enforce it, the conflicts of law *issue* regarding which forum's law should apply to the dispute may not be waiveable." *Domino's Pizza LLC v. Deak*, 383 F. App'x 155, 157 n.2 (3d Cir. 2010) (emphasis in original). The choice-of-law question, in any event, was bound up in the jurisdictional analysis in this case.

## C.    Plaintiff failed to prove that the first clause of the commercial activity exception applied.

To satisfy the first clause of the commercial activity exception, Plaintiff must satisfy two independent requirements: Plaintiff must demonstrate (1) that the gravamen of his suit is located in the United States; and (2) that the Republic's commercial activity had "substantial contact" with the United States. *See Jam v. Int'l Fin. Corp.*, 3 F.4th 405, 409 (D.C. Cir. 2021); *see also* 28 U.S.C. §§ 1603(e), 1605(a)(2). The Opposition conflates these independent requirements and

16

misconstrues the Republic's arguments, namely, the Republic does not contend that "its commercial activity was not the gravamen of Plaintiff's claim." Opp. 52. Rather, the Republic has demonstrated that (1) the gravamen of Plaintiff's suit is located *in Venezuela*; and (2) the commercial activity Plaintiff alleges in the United States is not sufficient "substantial contact" to satisfy the first clause of the commercial activity exception. Br. 38–39.

### 1. Plaintiff failed to prove that the gravamen of his suit is located in the United States.

The Republic demonstrated that, to satisfy the commercial activity exception's first clause, the gravamen of the lawsuit must be located in the United States. Br. 38–39 (collecting cases). Plaintiff fails to rebut the Republic's authorities. Nor does the Opposition address this Court's prior determination that the gravamen of Plaintiff's suit is located in *Venezuela*. *See Devengoechea*, 889 F.3d at 1224 (noting that Plaintiff's "lawsuit is based on an act that occurred outside the United States"). Plaintiff has thus conceded the gravamen of his suit is located outside of the United States, and as a result, that the first clause of the commercial activity exception does not apply. *Cf. Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) ("[W]hen a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned."); *see* Opp. 47 (acknowledging Plaintiff's claim is based upon an "act outside the United States"). The District Court's finding otherwise is reversible error.

17

### 2. Plaintiff failed to prove the Republic's alleged commercial activity had "substantial contact" with the United States.

To cure this fatal defect, Plaintiff relies on the first clause's "substantial contact" requirement and contends that the alleged "Venezuelan officials" had "extensive" contacts and reached the purported "dispositive" agreement with Plaintiff in the United States. Opp. 52–53. But even if true, it is still insufficient to overcome the fact that the gravamen of Plaintiff's claim is not in the United States. In any event, Plaintiff has neither proven these purported "Venezuelan officials" had the authority to bind the Republic, nor that the agreement was formed in Florida. *See supra* § I.B. Accordingly, there was nothing "dispositive" or "final" about the alleged discussions in Florida.

Plaintiff fails to rebut the settled proposition that, without more, preliminary negotiations in the United States are insufficient to establish the requisite "substantial contact" with the United States. Br. 40–41 (collecting cases). Instead, Plaintiff claims baldly that the Republic "mischaracteriz[ed]" the nature of the alleged negotiations that occurred in the United States. Opp. 53. The Republic did not. Plaintiff testified at "trial" that he negotiated with certain Venezuelan individuals for "four [to] five hours" in the United States, during which time these individuals agreed to travel to Venezuela to further inspect the Collection. Br. 41 (citing D.E. 310 at 21:1–9). Plaintiff also testified consistently throughout this litigation that these individuals agreed in Florida that after inspecting the Collection,

they would either return or pay for the Collection.  Br. 41 (citing D.E. 264, 135).

Plaintiff did *not* testify that the parties ever discussed — much less agreed upon —

a purchase price in the United States (or anywhere else), and thus inevitably would

have had to "continue negotiations."  Br. 41; *see also* D.E. 310 at 22:5–8.  The

negotiations Plaintiff described, therefore, were plainly preliminary in nature and

cannot satisfy the first clause's "substantial contact" requirement.  *See Schoeps v.

Freistaat Bayern*, 611 F. App'x 32, 34 (2d Cir. 2015) (holding preliminary meeting

conducted by individuals lacking apparent authority insufficient to create substantial

contact with the United States).

### D.    Plaintiff failed to prove that the second clause of the commercial activity exception applied.

Plaintiff contends summarily that the commercial activity exception's second

clause applies based solely on the District Court's equally threadbare reference to

"'numerous acts by Venezuela within the United States.'"  Opp. 54 (quoting D.E.

293 at 10).  But as the Republic explained, courts consistently understand the second

clause applicable only to a foreign sovereign's "*non-commercial* acts in the United

States that relate to commercial acts abroad."  *Kensington Int'l, Ltd. v. Itoua*, 505

F.3d 147, 157 (2d Cir. 2007); *see also* Br. 42–43 (collecting cases).

Plaintiff fails to engage with (much less rebut) the Republic's authorities,

thereby conceding this point.  *Cf. Jones*, 564 F. App'x at 434.  Plaintiff's reliance on

the District Court's reference to the Republic's "'numerous acts'" — without any

distinction as to the commercial or non-commercial nature of such acts — does not change this result. Opp. 54 (quoting D.E. 293 at 10). Indeed, when read in context, the District Court's reference to "numerous acts" plainly means the same alleged *commercial acts* of the Republic in the United States that the District Court purported satisfied the first clause of the commercial activity exception. *See* D.E. 293 at 10.

Because Plaintiff "has not argued that any non-commercial acts performed by" the Republic "in the United States allegedly formed the basis of its complaint," the second clause is "inapplicable." *Kensington*, 505 F.3d at 157. The District Court's finding of jurisdiction under the second clause absent any non-commercial act thus is reversible error.

### E. Plaintiff failed to prove that the third clause of the commercial activity exception applied.

To satisfy the third clause of the commercial activity exception, Plaintiff was required to establish that the Republic's "act" outside of the United States upon which the action was based caused a "direct effect" in the United States. In other words, to establish jurisdiction, Plaintiff had to prove that the Republic's breach of the alleged bailment, which ostensibly occurred outside of the United States, caused "a direct effect in the United States" where the United States was the exclusive place of performance under the agreement. *See* Br. 43–44 (collecting cases). Plaintiff proved none of these requirements.

20

### 1.     Plaintiff failed to prove the Republic breached the bailment.

As a threshold matter, Plaintiff faults the Republic (at 44) for pointing out that the record before the District Court shows that the Collection *was returned to Plaintiff's cousin and agent, Mr. Mier*. Br. 44 (citing D.E. 200-1 at 49, 66–67, 70; D.E. 222-4; D.E. 222-14 at 3). Plaintiff would have this Court ignore this critical contradiction in the record on the premise that only the trial record, and not evidence submitted in the case prior to "trial," governs and all else must be ignored. A court's assessment of subject-matter jurisdiction, however, must consider all evidence before it, weighing it if necessary to assure itself that jurisdiction exists. *See Helmerich*, 581 U.S. at 174 ("[W]here jurisdictional questions turn upon further factual development, the trial judge may take evidence and resolve relevant factual disputes.").

With the return of the Collection to Plaintiff's agent in Venezuela, the Republic did not breach the alleged bailment at all, and thus, its actions could not have caused a "direct effect" in the United States. Plaintiff nevertheless contends he refuted this evidence "in detail" by demonstrating Mier was never authorized to retrieve the Collection and made "false statements" in his communications. Opp. 50. Once again, however, the only evidence Plaintiff offers is his own self-serving, speculative, and unsupported testimony. *See* Opp. 50–51 (citing D.E. 264). Plaintiff's testimony that he never authorized Mier to retrieve the Collection (at D.E.

21

264 ¶ 35) is unreliable in the face of probative evidence demonstrating Plaintiff was both aware of Mr. Mier's efforts and authorized him to further Plaintiff's interests in retrieving the Collection. *See* D.E. 222-4; D.E. 200-1 at 49, 58, 66–67, 70; D.E. 222-14 at 3. And Plaintiff's speculation — without any proof — that Mier's statements were "false" (*see, e.g.*, D.E. 264 ¶ 36) is insufficient to rebut the same. *See Broward Bulldog, Inc. v. U.S. Dep't of Just.*, 939 F.3d 1164, 1178–79 (11th Cir. 2019) ("[M]ere speculation is not enough to rebut the showing by [the opposing party]."). Plaintiff therefore failed to prove the Republic breached the bailment, such that the breach could cause any direct effect in the United States.

### 2. Plaintiff failed to prove that the United States was the exclusive place of performance of the bailment.

Plaintiff contends misleadingly that he consistently alleged Florida was the bailment's place of performance throughout this litigation. *See* Opp. 48–49. But there is nothing in Plaintiff's Second Amended Complaint to support Plaintiff's assertion. *See id.*; D.E. 140. And Plaintiff's reliance on this Court's 2018 decision in *Devengoechea* (at 48–49) mischaracterizes the nature of those proceedings and this Court's findings. In that decision, the panel found only that Plaintiff had *impliedly* alleged the Republic was required to pay or return the Collection to Plaintiff in the United States by piecing together separate factual allegations, "in the light most favorable to [Plaintiff]." *See Devengoechea*, 889 F.3d at 1225–26. This Court never conclusively determined that Plaintiff *proved* the United States was the

22

exclusive place of performance, only that he had sufficiently *alleged* as much.  Nor can Plaintiff's deposition testimony overcome the record evidence demonstrating the Republic could (and in fact did) return the Collection to Plaintiff in Venezuela via his agent, Mr. Mier.  *See supra* § I.E.1.

Moreover, the Opposition fails to acknowledge the Republic's authorities holding that a state's mere discretion to perform in the United States cannot constitute a direct effect.  Br. 43–44 (collecting cases).  Consistent with the breadth of cases relied upon by the Republic, the D.C. Circuit recently held in *Wye Oak Technology, Inc. v. Republic of Iraq*, that "when a foreign state merely has the discretion to pay in the United States, the missing funds do not have a direct effect in the United States."  109 F.4th 509, 517 (D.C. Cir. 2024).  "That is because, when the foreign state is not 'supposed' to send money into the United States, its failure to pay the plaintiff has no 'immediate consequence' there."  *Id.*

Here, even if the Republic failed to pay Plaintiff in the United States, "the missing funds [would] not have [had] a direct effect in the United States" because the Republic was never "*supposed*" to pay Plaintiff; the Republic "ha[d] the discretion" not to pay Plaintiff at all and instead return the Collection to him, which the evidence shows occurred.  *See supra* § I.E.1; *Wye Oak*, 109 F.4th at 517 (emphasis added).  The United States, therefore, *cannot* be the exclusive place of performance.  *See Wye Oak*, 109 F.4th at 517; *see also* Opp. 34 (acknowledging that

"part of the initial *performance* [of the bailment] was in Venezuela") (emphasis in original).

Finally, Plaintiff asserts that Florida law requires payment where the creditor (Plaintiff) is located, suggesting that the payment arrangement under the alleged bailment caused a direct effect in the United States.  *See* Opp. 51.  But even if Florida law applied (and it does not (*supra* § I.B.2)), Plaintiff does not contest that this legal requirement applies only where there is "an express promise to pay" under Florida law.  Br. 48 (citing *James A. Knowles, Inc. v. Imperial Lumber Co.*, 238 So. 2d 487, 489 (Fla. Dist. Ct. App. 1970)).  Plaintiff claims instead that the District Court "found [] that an agreed price *would be paid*" in Florida.  Opp. 51 (emphasis added).  But Plaintiff cannot escape the fact that the parties never negotiated a purchase price, including because the Republic had the option to return the Collection (and the Collection was returned).  *See supra* I.B.2.  Thus, there was no such "express promise" here, and this principle is inapplicable.  *See James*, 238 So.2d at 489.

Plaintiff thus failed to prove that the Republic's activity abroad caused a "direct effect in the United States."  The District Court's finding of jurisdiction under the third clause therefore is reversible error.

## II.   THE DISTRICT COURT LACKED PERSONAL JURISDICTION OVER THE REPUBLIC

Plaintiff is wrong that the Republic purportedly "waived" its right to challenge personal jurisdiction.  Opp. 54–55.  Personal jurisdiction exists over a foreign

24

sovereign when both (1) service has been effected pursuant to § 1608(a); and (2) an exception to sovereign immunity has been established under §§ 1605–1607.  Br. 49.  The Magistrate Judge's opinion upon which Plaintiff relies found that the Republic had waived *only* the service of process element of personal jurisdiction.  *See* D.E. 137 at 16.  Thus, the Republic has not (and could not have) waived the entire defense of personal jurisdiction.

Finally, Plaintiff erroneously claims that specific personal jurisdiction exists based on the Republic's alleged minimum contacts with the United States.  *See* Opp. 55.  As an initial matter, this Circuit has not determined whether a foreign state is subject to a constitutional due process analysis for purposes of personal jurisdiction.  *See S & Davis Int'l, Inc. v. Republic of Yemen*, 218 F.3d 1292, 1303–04 (11th Cir. 2000) (declining "to determine the precise constitutional status of a foreign sovereign" for purposes of establishing personal jurisdiction).  But this Court need not reach that question here, where Plaintiff cannot establish personal jurisdiction under the FSIA.  In any event, Plaintiff has not alleged any facts that could establish sufficient minimum contacts under the traditional test.  *See Herederos De Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*, 43 F.4th 1303, 1310 (11th Cir. 2022).

## III.  THE DISTRICT COURT ERRED IN ASSESSING PLAINTIFF'S DAMAGES

Aside from a sweeping statement that "this is a classic case of waiver," the Opposition offers no explanation why this Court should not hear the Republic's

damages challenges. Opp. 55. As the Republic explained, this Court should exercise its discretion to hear these challenges in these "exceptional circumstances." Br. 50 (citing *Owens v. Republic of Sudan*, 864 F.3d 751, 814 (D.C. Cir. 2017)).

Plaintiff's responses to the substance of the Republic's damages challenges likewise fail.

*First*, Plaintiff altogether ignores the applicability of *Cassirer v. Thyssen-Bornemisza Collection Foundation*, 596 U.S. 107, 114–15 (2022) (Br. 51–52), and instead merely refers to previous sections of the Opposition. *See* Opp. 55 (citing Opp. 34–36). Those arguments (at Opp. 34–36) are irrelevant here, where the Supreme Court instructs that § 1606 of the FSIA compels review of Florida's choice-of-law rules to assess Plaintiff's damages. *See Cassirer*, 596 U.S. at 114–15.

*Second*, the Opposition's contention that the Republic misrepresented Mr. Reznikoff's testimony and that "[t]here was no judicial impropriety" in assessing Plaintiff's damages award is equally unavailing. Opp. 28–29, 56. The Republic never asserted Mr. Reznikoff's report was premised "only" on interviews and photographs from Plaintiff, as Plaintiff contends. Opp. 27. Rather, the Republic pointed out that the factual premise of Mr. Reznikoff's report was information he received from Plaintiff. Br. 22. Additionally, Plaintiff's assertion that Mr. Reznikoff "later reduced" his estimated range is misleading. Opp. 28, 56. The District Court noted that its "earlier question kind of dealt with current price, and

[Mr. Reznikoff] had it between 10 and 15 million." D.E. 310 at 61:19–21. The District Court then asked Mr. Reznikoff for a non-conservative "range of values" "using the date when communications were stopped" purportedly between Plaintiff and the Republic. *Id.* at 61:13–25. Confining himself to the Court's new date range (*i.e.*, the date communications apparently ceased between Plaintiff and the Republic), Mr. Reznikoff testified the range the Court requested was "8 to 10 million." *Id.* at 62:1–2. Finally, that Mr. Reznikoff expressed his valuation was "conservative" does not change the fact that the District Court prompted him to provide a higher number than he originally offered. *See* Br. 52–54 (citing D.E. 310 at 42:1–45:16). This is precisely the kind of abuse of discretion this Court was concerned with in *Hanson v. Waller*, 888 F.2d 806, 813 (11th Cir. 1989).

*Third*, the Opposition's remaining arguments regarding the amount of prejudgment interest awarded and the Executive Branch's interest in preserving the Republic's assets also miss the mark. *See* Opp. 56–57. Contrary to Plaintiff's suggestion, the Republic never argued the damages award was improper because of these issues. Rather, the Republic demonstrated that the grossly inflated size of the award and important U.S.-foreign policy interests favored this Court exercising its discretion to hear the Republic's damages challenges. Br. 50–51.

## **CONCLUSION**

For all these reasons, the Court should vacate the Findings of Fact and Conclusions of Law (D.E. 293) and Final Judgment (D.E. 295), and remand with instructions that the District Court dismiss the action with prejudice. As such, the Court should likewise vacate the orders allowing Plaintiff to execute upon the judgment. *See* D.E. 294, D.E. 299.

Dated:  September 3, 2024

Respectfully submitted,

By: /s/ *Claire A. DeLelle*
Claire A. DeLelle
Blair E. Trahan
White & Case LLP
701 Thirteenth Street, N.W.
Washington, D.C., 20005
claire.delelle@whitecase.com
blair.trahan@whitecase.com
(202) 626-3600

Jaime A. Bianchi
Dylan Fay
White & Case LLP
200 S Biscayne Blvd.
Miami, FL 33131
jbianchi@whitecase.com
dylan.fay@whitecase.com
(305) 371-2700

*Counsel for the Bolivarian Republic of Venezuela*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-face and volume limitations of Federal Rules of Appellate Procedure 32(a)(5)–(7) and this Court's local rules because it contains 6,404 words, excluding parts of the brief exempted by Rule 32(f) and this Court's local rules, and has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

/s/ *Claire A. DeLelle*
Claire A. DeLelle

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 3rd day of September 2024, the foregoing was electronically filed through this Court's CM/ECF system and a copy was electronically served through the CM/ECF system on all registered counsel of record.

I further certify that, on September 3, 2024, four copies of the foregoing document were dispatched via third-party commercial carrier to the following:

Clerk of Court
U.S. Court of Appeals for the 11th Circuit
56 Forsyth St. N.W.
Atlanta, Georgia 30303

/s/ *Claire A. DeLelle*
Claire A. DeLelle